JIMMIE "RED" JONES, AUDITOR OF THE STATE OF ARKANSAS v. JAMES ORVILLE CHENEY

5-5931                                              489 S.W. 2d 785

Opinion delivered February 2, 1973

*Ray Thornton,* Atty. Gen., by: *Milton Lueken,* Asst. Atty. Gen., for appellant.

*Sam Robinson,* for appellee.

Brief of Amicus Curiae by *Henry Woods,* President, Arkansas Bar Association.

H. H. McKENZIE, Special Justice. This suit was instituted on May 26th, 1970, by the appellee to obtain retirement benefits under the provisions of Act 148 of the Arkansas General Assembly for 1965. The appellant resisted the claim on the ground that the appellee was not qualified because he did not serve ten years on any one of the commissions named in Act 167 of the Arkansas General Assembly for 1967. The appellee, however, contends his rights had become vested prior to the adoption of Act 167 and was, therefore, entitled to retirement benefits.

The litigation was commenced in Pulaski Chancery Court on a petition for a writ of mandamus, but on demurrer it was transferred to the Circuit Court where, on December 14, 1970, appellant's second demurrer was overruled. On September 1, 1971, the Circuit Court rendered a mandamus order directing the appellant to pay appellee the retirement benefits provided by Act 148 of 1965. This appeal followed.

The issue, upon undisputed facts, is whether the appellee's rights had become vested prior to the adoption of Act 167 of 1967. If this question is answered in the affirmative, the Trial Court's ruling must be affirmed, whereas, if the proper answer is a negative one, then the appellee's prayer for retirement pay should be denied.

Act 148 of 1965, codified as Ark. Stat. Ann. §§ 12-2701—12-2709 (Repl. 1968), established the Quasi-Judicial

Retirement System for the State of Arkansas. This Act provides that a person who has been a member of the Arkansas Public Service Commission, the Arkansas Workmen's Compensation Commission, or the Arkansas Commerce Commission may, if he meets certain enumerated requirements, become eligible at age 65 for a straight life annuity payable monthly. The provision of Act 148 of 1965 that would have been applicable to Mr. Cheney, had he been of retirement age when the 1967 Act was passed, is Ark. Stat. Ann. § 12-2705 (a) (6) which provides as follows:

> 12-2705. Eligibility for annuity—Age of retirement —Tenure of service—(a) Members of the system who meet the following requirements shall be eligible for a straight life annuity payable monthly:

> (6) Upon reaching age sixty-five (65) after having served on one or more of the following: the Arkansas Workmen's Compensation Commission, the Arkansas Commerce Commission, the Arkansas Public Service Commission (or successors to such tribunals) and in other appointive or elective positions of Arkansas State government for a combined total period of not less than fifteen (15) years.

In 1967, prior to Mr. Cheney's 65th birthday, the Legislature amended Act 148 of 1965 by the passage of Act 167 of 1967, codified as Ark. Stat. Ann. § 12-2705.1-2. This latter Act provides in part as follows:

> 12-2705.2 Limitations on eligibility to receive retirement benefits.—No present or future member of the Quasi-Judicial Retirement System established under the provisions of Act 148 of 1965 (§§ 12-2701—12-2709) shall be eligible to receive retirement benefits under said System:

> (c) Unless such person has been a member of the Arkansas Workmen's Compensation Commission, the Arkansas Commerce Commission, or the Arkansas Public Service Commission, for a period of not less than ten (10) years. Provided, that if any member of the Quasi-Judicial Retirement System shall be dis-

qualified from receiving benefits under said System by virtue of this Subsection, then such person may, upon application therefor, transfer his years of creditable service as an employee of the State of Arkansas, to the State Employees Retirement System in the manner authorized by law.

Appellee served more than eight years as State Senator, more than nine years as State Revenue Commissioner, and more than three years as a member of the Commerce Commission, totaling more than twenty years, all for the State of Arkansas. Over fifteen years of such time was served prior to the adoption of Act 167 of 1967. At the time he retired from the Commerce Commission, appellee was in all respects qualified under Act 148 of 1965 to receive retirement benefits except the attainment of the age of 65,—the only requirement over which he had no control. He did not, however, serve ten years on any one of the Commissions named in Act 167 of 1967. Cheney made proper, sufficient, and legal contributions to the Quasi-Judicial Retirement System as provided by law, and became sixty-five years of age on January 30th, 1970. Appellee applied for retirement benefits under Act 148 of 1965, and filed the required evidences of age and service, but appellant refused to make such payments, taking the position that because appellee had not served ten years on one of the commissions named in Act 167 of 1967, appellee is ineligible for benefits provided by Act 148 of 1965.

When do rights under the System become vested is the critical question presented,—in effect resolving itself into one of law of first impression in this state, and differing from that in the later case of *Pyle* v. *Webb,* No. 5957, in which we have also today rendered our opinion. There the member (Webb) had fulfilled all legal requirements under the Teacher Retirement System, *including that of age,* having been actually receiving annuity payments when the amending statute was enacted, causing his compensation to be discontinued, thus becoming the subject of controversy.

It is important to consider the characteristics of the Quasi-Judicial Retirement System which provides for a participation on a voluntary basis. Ark. Stat. § 12-2701 (b)

and 12-2708. The system is entirely dependent on contributions from its members without any matching of contributions from the State's general revenues, Ark. Stat. § 12-2703—4, except as directed by Ark. Stat. 12-2707 (Repl. 1968). § 12-2707 requires a transfer of funds held by the three commissions named in § 12-2705 (a) (6) to the Retirement System fund to provide appropriate annuity requirements for the financial stability of the retirement system. It is urged in the Brief of Amicus Curiae that a distinction should be made between a *pension fund* and a *retirement system based on voluntary contributions of the employee.* It would have certainly been helpful if the Courts had years ago clearly made the suggested distinction, as that would indeed facilitate interpretation of the various judicial decisions, which must be considered properly to decide the question presented in the present case. The retirement pay received by a retired employee or pensioner (whichever term is used) under a system based on voluntary contributions of the employee, represents delayed compensation for services rendered in the past due under a contractual obligation inuring to his benefit, and is not a gratuitous allowance in which the pensioner has no vested right. In *Daggett* v. *St. Francis Levee Dist.,* 226 Ark. 545, 291 S.W. 2d 254 (1956) it was held that a retirement allowance financed over a period of years by the joint contributions of the employer and employee represents compensation rather than a mere gratuity. See also *Chandler* v. *Board of Trustees of the Teacher Retirement System of the State of Arkansas,* 236 Ark. 256, 365 S.W. 2d 447 (1963).

Technically, a pension constitutes a "mere gratuity" subject to modification or repeal as opposed to a vested right not subject to such impairment. *Hickey* v. *Pittsburgh Pension Board,* 378 Pa. 300, 106 A 2d 233 (1954; *W. C. Smith* v. *City of Dothan et al,* 188 So. 2d 532 (1966 Alabama); *Board of Trustees of the Police Pension and Retirement System of Tulsa* v. *Kern,* 366 P. 2d 415 (Oklahoma 1961); *Bordens* v. *Board of Trustees of Judges Retirement System,* 174 N. E. 2d 169 (Illinois 1961). Whether the plan envisioned by the Legislature, as reflected by the wording of Act 148 of 1965, was to create a "pension fund" or a "retirement system" is, according to our perception of its legal effect, immaterial and dependent

upon a choice of words. We say Act 148 of 1965, was to create a voluntary contribution system—contractual in nature. If a label is required, we would refer to the plan as a "Retirement System," providing a source of income to the retiree. This for the reason the word "retirement," in the view we take, is more expressive of the legislative intent and the legal effect of Act 148 than the word "pension."

The Constitution of the United States § 10 Article 1, provides that no state shall pass any law impairing the obligations of contracts, while our Arkansas Constitution Article 2 § 17 provides "No bill of attainder, ex post facto law or law impairing the obligation of contracts shall ever be passed."

The classes of contracts entered into voluntarily that are based on the assent of the parties expressly or impliedly given as opposed to those that are compulsory, are protected by the Constitutional provisions against impairing the obligation of a contract. In *Anders* v. *Nicholson*, 111 Fla. 849, 150 So. 639 (1933), is was held under a municipal ordinance providing for pensions to employees who should elect to participate in, and contribute to, the pension fund, that a public employee by acceptance of the terms and conditions of the enactment entered into a contractual relationship with the city, which entitled him to receive certain benefits, and his rights accruing under the statute could not be abrogated by any subsequent legislation. In *Commissioner of Labor* v. *Renfroe*, AR 253 No. 9, Page 367 (10-30-72) under dissimilar facts to those existing in the principal case, this Court said:

> "Retirement pay is generally considered not to be a pension or gratuity but as adjusted compensation presently earned by an employee but payable in the future. (P. 371)."

It would appear that much of the confusion created by the decisions of various courts throughout the United States in dealing with this subject is primarily due to the fact that annuity funds arising under retirement systems are frequently referred to as pension funds, and the payments therefrom as pensions. Where those terms are used

interchangeably in this opinion, it is not because we endorse the nomenclature, but because they are so referred to in some of the decisions cited herein.

"Pensions and retirement allowances, when provided by law, constitute a part of the officer's compensation. Some of the bases for determining whether a fund is a pension or annuity fund are the amount of contributions, and whether the deductions are compulsory or voluntary; but it has been pointed out that the courts frequently have failed to use distinguishing terminology in discussing pensions and annuities to public officers or employees, and that an annuity fund is frequently referred to as a 'pension fund' and payments therefrom as 'pensions.' " 67 C.J.S. § 92b. page 332. See also 60 Am Jur 2d § 2.pages 878-80.

Appellee voluntarily accepted the provisions of the 1965 Act. He made all the required payments which constituted his contribution to the retirement fund. This had the effect of appellee's having received his full salary and returning a part to meet his share of the contribution to the retirement fund. The deducted sums belonged to him and were withheld through his agency and agreement. The consideration for his so doing was set forth in the 1965 Act. Now to hold the 1967 Act effective against appellee would deprive him of his constitutional right to have his relationship remain unimpaired.

Appellee relies strongly (we believe rightfully so) on the case of *Hickey* v. *Pittsburgh Pension Board,* 378 Pa. 300, 106 A 2d, 233 (1954). This case is cited many times as an authority in the numerous decisions involving pensions and retirement annuities. At the age of twenty-eight years, Hickey started to work for the City of Pittsburgh on May 10th, 1910, and completed the required twenty years of service on May 10th, 1930. In 1915, the Legislature of Pennsylvania passed a pension law providing certain retirement benefits when an employee had reached sixty years of age after having worked for the city twenty years. In 1933, *the Legislature amended the 1915 Act before Hickey became sixty years of age.* In the principal case, *the Arkansas Legislature amended the 1965 Act in 1967 before Cheney reached the eligible age of sixty-five*

*years.* When the Pennsylvania law was amended, Hickey had already served his required twenty years, and when the Arkansas law was amended in 1967, Cheney had already served his required time under the 1965 Statute. In January, 1947, Hickey became sixty years of age, and his retirement payments were started. The 1933 Act in *Hickey, supra* provided that if a pensioner worked for the county, the Board had authority to suspend the pension payments. When the 1933 Act was passed, Hickey had completed twenty-three years of service as a city employee, and had made contributions into the pension fund for more than seventeen years. He continued to work for the City until February, 1952, when he started to work for the county, resulting in the Pension Board discontinuing payments to him under the supposed authority of the 1933 Act. Hickey filed a complaint in mandamus to compel the Pension Board to pay him the pension installments regardless of other employment. The Court below dismissed the complaint, and Hickey appealed. The appellate court reversed, holding that Hickey's rights became vested when he completed twenty years of service on May 10th, 1930, and had made all the material pension contributions. This vested right was personal property to be held until Hickey became sixty years of age in January, 1947, and the Legislature could not after May 10th, 1930, alter Hickey's rights.

This Court concludes the rule set forth in *Hickey, supra* is sound, fair, and just, and should be adopted in the principal case. We hold that Cheney's rights became firmly vested when he fulfilled the service requirements, which was prior to the passage of the 1967 Act. Notwithstanding *Retirement Bd.* v. *McGovern,* 316 Pa. 161, 174 A400 (1934) cited in *Hickey, supra* seems to hold the Legislature does have the power at any time subsequent to the passage of the Act creating the system to make changes in the law so as to render intact the actuarial soundness of the system (also 52 ALR 2d No. 30, P. 476), *Hickey, supra* clearly holds the Legislature may strengthen the actuarial fibers, *but it cannot break the bonds of contractual obligations.* (emphasis supplied) The permissible changes, amendments and alterations provided for by the Legislature can apply only to conditions in the future, and never to the past. We say that is the better

rationale to apply in the present case and the one we adopt; so that after appellee's rights became vested by his having met the service requirements, his entitlements could not thereafter without his consent be affected by any future enactment,—not by the 1967 Act. *Yeazell* v. *Copuis*, (Arizona 1935) 402 P 2d 541, in which there is demonstrated the wide diversity of court rulings throughout the states on the various aspects of the retirement or pension laws and particularly as to when the employee's or member's rights vest. See also *Bordens* v. *Board of Trustees of Judges Retirement System*, 174 N.E. 2d 169 (Illinois 1961). In the instant case, there is no contention or proof that the 1967 Act "strengthens the actuarial fibers" of the system. Had Cheney discontinued his voluntary contributions or severed his employment prior to fulfilling his service requirement under the 1965 Act, he would have lost his rights under the Retirement System, but no such violation occurred. When he fulfilled the contributions and service requirements, his annuity or retirement benefits were then assured upon his attaining sixty-five years of age, and should have been allowed when he reached that age. Considering *Hickey, supra* as being nearly on all fours with the case at issue, and being impressed with some of the statements appearing therein, we quote:

> "In 1934 we said in the case of Retirement Board of Allegheny County v. McGovern, 316 Pa 161, 177, 174 A 400, 408:
>
> 'The Legislature, in effect, makes this offer to the employee: The state or municipality will contribute so much money to a fund and you will contribute to the same fund for a given time on the basis of service performed. . . . . It is difficult to understand where this relation lacks the elements of an executory contract if the employee and the state have directly or indirectly made any payments on account of it.'
>
> Further,
>
> 'Retirement pay is defined as 'adjusted compensation' presently earned, which, with contributions from employees, is payable in the future.'

In 1939 we said in the case of McBride v. Allegheny County Retirement Board, 330 Pa 402, 199 A 130, 133:

'Our act establishing the county employees' retirement system, and also the acts providing for retirement of state employees, employees of cities of the first class, teachers, and motor police, recognize the employee as being a party to the contract.'

If Hickey is a party to a contract the Legislature may not impair that contract. Hickey agreed to work for the City 20 years and to pay certain sums into the Pension Fund. He has fulfilled those conditions. The City agreed, in its turn, to pay Hickey a pension or compensation for the remainder of his life when he reached his 60th year. Shutting off the pension because he obtained employment elsewhere is refusal on the part of the Pension Fund to abide by its contract. If this contract had been entered into between a private individual and a private corporation it is unquestioned that the Legislature could not impose an additional condition for its fulfillment. The law does not change because one of the parties is a governmental agency." 52 ALR 2d 430 et seq. (P. 434).

A refusal to now pay appellee the retirement pay due him is a refusal on the part of the Retirement System to abide by the terms of the Contract.

There are some recent cases, primarily from California, that hold an employee obtains vested rights in a pension fund upon the acceptance of employment. See e.g. *Chapin* v. *City Commissioner of Fresno*, 149 Cal. App. 2d 40, 307 P2d 657; and *Abbott* v. *San Diego*, 165 Cal. App. 2d 511, 332 P 2d 324; which, although involving rights under a city charter, in effect holds that rights arising before the happening of a contingency making the pension payable, cannot be constitutionally abolished by subsequent changes in the law. The California Supreme Court has consistently held that it is a general and well recognized rule that pension provisions shall be liberally construed in favor of the applicant. *Gibson* v. *City of San Diego*, 25 Cal. 2d 930, 935, 156 P2d 737, 740; *Lyons* v. *Hoolver*, 41 Cal. 2d. . . , 258 P2d 4; *McKeag* v. *Bd. of*

*Pensions Com'rs.,* 21 Cal 2d 486, 390-132 P2d 198. Inasmuch as Cheney was not required under the 1965 Act to be a member of any Quasi-Judicial Tribunal at the time of filing for a retirement annuity (Ark. Stat. 12-2706), and since we hold that Cheney's rights became vested prior to the enactment of the 1967 Act, the Act cannot be construed constitutionally to now deprive him of his retirement benefits under the 1965 Act.

> "Rights are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest." 16 CJS Constitutional Law § 215, page 1173.

Courts have consistently held that retroactive laws are invalid only if they impair the obligations of contracts or rights accruing thereunder, and, therefore, infringe on certain vested rights. *Talkington* v. *Turnbaw,* 190 Ark. 1138, 83 S.W. 2d 71 (1935), *Coco* v. *Miller,* 193 Ark. 999, 104 S.W. 2d 209 (1937), and *Gillioz* v. *Kincannon,* 213 Ark. 1010, 214 S.W. 2d 212 (1948). Cheney's rights were clearly defined in Act 148 of 1965 and his rights became consummate when he fulfilled the service requirements created by the Act.

The rights of anyone electing after the effective date of the 1967 Act to become a member of the retirement system would, of course, be governed by the law as so amended. *Cross* v. *Graham,* 224 Ark. 277, 272 S.W. 2d 682 (1954). Accordingly, there is no basis on which to classify the 1967 Act as ex post facto legislation. It was certainly not within the constitutional power of the legislature to enact legislation which operated retroactively so as to affect the contractual relationship between the Retirement System and Cheney created before the passage of the 1967 Act, as the 1965 Act contained no reservation permitting any such change. The constitutional provision prohibiting the passage of laws impairing obligations of contracts applies to contracts, not only between individuals, but also to those made by the state or by one of its agencies when authorized by law. *W. C. Smith* v. *City of Dothan, et al, supra.*

Basically, appellant simply argues that chronology should control, but we are not impressed with the rea-

soning that just because Cheney was not 65 years of age (a contingency over which he had no control) he should be deprived of his rights fixed by the 1965 statute,—rights to which he was contractually entitled under that act to enjoy when he became 65. Such deprivation would be a unilateral abolishment of his entitlement.

Found in 52 ALR 2d, page 437, et seq. is a rather exhaustive annotation on the subject of "Vested rights of pensioner to pension," which elaborates particularly as to when and under what conditions a pensioner's rights actually vest. These general statements are made by the author:

"Development of the law on the question under annotation has been long and tortuous, reflecting the increasing pressure placed upon the judiciary by the evolution of the now generally accepted theory that pensions are a part of the compensation of an employee to which, under ordinary circumstances, he is as much entitled as he is to the wages paid him for the work he has actually performed."

"There is general agreement among the courts in various jurisdictions that an employee who is eligible for a pension has rights therein which are 'vested' in the sense that authorities administering the pension system cannot deny him the pension, or alter the amounts of his pension payment except in accordance with the express or implied provisions of the pension statute." 52 ALR 2d P. 441.

"In a number of jurisdictions it is held that, where participation in a statutory public employees' pension system calling for employee contributions is on a voluntary basis, the relationship between the system and the participating employee is contractual, and legislative abrogation of the employee's contractual rights is barred." 52 ALR 2d 443.

In New Jersey it was held:

"...And the 'no vested rights' rule has been held to apply only to statutory pension systems which

either do not require employee contributions, or require such contributions on a compulsory basis. Thus, in the leading case of Ball v. Teachers' Retirement Fund (1904) 71 NJL 64, 58 A 111, it was held that, under a statute providing for a teachers' retirement fund which made it optional with the teachers to come under its provisions and to have a certain amount deducted from their monthly salary, the legal relation between teachers who had accepted the provisions of the statute and the board of trustees of the retirement fund was contractual, the terms of the contract to be ascertained by reference to the statute; the contract, it was said, could not be altered without the consent of both parties thereto, and without a sufficient consideration. Having taken this view, the court ruled that a statute enacted after a teacher's election to participate in the retirement fund, operating to make the retirement of a teacher dependent upon the approval of the board of trustees, rather than (as under the earlier statute) merely upon the teacher's request, did not affect existing contracts, as it was an attempt to impair the obligation thereof, and thus was beyond the power of the legislature." 52 ALR 2d 467.

This opinion will not be unduly prolonged to analyze or distinguish the cases from other jurisdictions that take the view we have expressed in aligning Arkansas with the minority rule. Neither will we comment upon the numerous cases supporting the majority rule that we do not follow, being to the effect that notwithstanding contributions made by the employee, whether compulsory or voluntary, his rights do not become vested until all requirements of the statute have been met, and he is entitled to retirement allowances. We have considered all appellant's citations of authority as well as many other cases not cited, and hold under the minority rule, that appellee's right became vested when he fulfilled the service requirements under Act 148 of 1965, before the passage of Act 167 of 1967, which was enacted prior to appellee's becoming 65 years old. Having attained that age when he applied for benefits, appellee is entitled to retirement pay provided by the 1965 Act, and as directed by the Mandamus Order of the Circuit Court.

Affirmed.

Ross, James A., Special C. J., and Arnold, Richard L., Reid, Richard, McAllister, A. D., Rieves, Elton A., Special JJ., concur. Soloman, David, Special J., dissents.

David Soloman, Special Justice dissenting. I respectfully dissent from the conclusions reached by the majority and would reverse the Pulaski County Circuit Court.

My reasoning does not require a distinction of the type of plan involved herein—contributory, non-contributory, mandatory, voluntary, or any other. Simply, my basis for dissent is the fact that any type of plan involving employees of the State of Arkansas has inherent in it the right and ability of the State to alter the plan prior to the recipient actually receiving benefits thereunder, or rather becoming entitled thereto based on the then existing law. Although we use the word "vesting", and it might be the most appropriate, I do not think the member or recipient has reached this pinnacle until all the conditions have been achieved on his part under the then existing law. Up until this time the State of Arkansas acting through the legislative process can amend, alter and change the conditions under which the recipient participates—no "vesting".

The distinction in my reasoning is that the governmental process has created a condition or contract, but implicit and a part thereof is that the State is not subject to the same rules as a private individual or private corporate entity. The philosophy of our government necessarily is that the future is subject to change, and that rigid processes must bend when the determination of such need is made by the appropriate governmental authorities. To me this is most true in the pension or retirement plans.

Admittedly there is a great conflict in the State and Federal Courts on this issue, and it is possible to reach most any conclusion and to find authority for this conclusion. The majority opinion has given attention to these many distinctions and conflicts. My reasoning is

that since Appellee had not fulfilled all of the requirements on his part at the time the amendment to the plan became a law, he is governed by the law in effect when he had fulfilled all the requirements.

The Court in *Creps* v. *Board of Firemens Relief and Retirement Fund, Trustees of Amarillo, Texas,* 456 S.W. 2d 434 (1970) expressed my reasoning when it said:

> "The firemen here had no vested property right in the pension fund that is necessary for the invocation of constitutional protection. Until the firemen, under the law, had a statutory right of refund or a right to receive a pension therefrom, their right in the fund was only an expectancy based upon, not only their continued employment for the required number of years, but also the continued existence of the law which is subject to revision, modification or complete abrogation by the Legislature."

As stated I would reverse the lower Court and enter judgment for the Appellant.