The Honorable Brent Haltom Prosecuting Attorney Eighth Judicial District Miller County Courthouse Texarkana, Arkansas 75502
Dear Mr. Haltom:
This letter is in response to your request for an opinion regarding certain municipal retirement plan issues. On behalf of Thomas H. Johnson, City Attorney for the city of Garland City, Arkansas, you have presented the following specific questions:
 (1) Is a city of the second class required to pay a former mayor a retirement pension?
 (2) If a former city council of a second class city passes an ordinance providing a retirement pension for a former mayor, may a subsequent city council repeal such retirement benefit ordinance?
 (3) If a former city council of a second class city passes an ordinance providing a retirement pension for a former mayor, may such ordinance be repealed by a vote of the city residents?
 (4) Is a city of the second class required to pay a former elected official, namely a city marshal, vacation pay where that person was never paid vacation pay during his tenure as city marshal?
Response
Question 1 — Is a city of the second class required to pay a former mayora retirement pension?
It is my opinion that the answer to your question will depend upon whether the city has voted to provide a retirement plan and retirement benefits to its nonuniformed employees.
I have previously opined that cities may only opt to provide retirement plans pursuant to A.C.A. §§ 24-12-101 et seq. (See Attorney General Opinion No. 88-341.) A.C.A. §§ 24-12-101 et seq. authorizes cities to choose to provide retirement plans and benefits to their "nonuniformed employees." (The phrase "nonuniformed employees" is defined to include the mayor, city attorney, city treasurer, city clerk, and municipal judge of the city.) However, cities are not required to do so. Under the provisions of A.C.A. § 24-12-103(a), the statute will not apply to any city that has not chosen, by a favorable vote of a majority of the city's voters, to provide a retirement plan pursuant to the statute.
If the city of Garland City, Arkansas has not opted in this manner to provide retirement benefits for its nonuniformed employees, it is not then required to pay a former mayor a retirement pension.[1]
If, however, the city of Garland City, Arkansas has validly adopted a retirement plan under A.C.A. §§ 24-12-101 et seq., it must comply with the requirements of the plan as set forth in that statute. This office has previously opined that the statute mandates the payment of benefits to a mayor in a city of the second class that has adopted a retirement plan.See Attorney General Opinion No. 87-296. (The mayor must, of course, vest in the plan under the provisions of A.C.A. § 24-12-124. That is, he must have served as mayor for twenty years, or he must have served as mayor for sixteen years and be age 65.) The rationale for the conclusion in Opinion 87-296 was that the language of the section of the statute addressing the payment of benefits is mandatory. A.C.A. § 24-12-124
states: "The retirement benefits shall be prescribed by the city council." (Emphasis added.) The word "shall," when used in a statute, is interpreted by the Arkansas Supreme Court to mean that the legislature intended that compliance with the provisions of the statute is mandatory, unless such an interpretation would lead to an absurdity.See, e.g., Loyd v. Knight, 288 Ark. 474, 706 S.W.2d 393 (1986). I therefore conclude that A.C.A. § 24-12-124 requires cities of the second class that have opted to be governed the provisions of A.C.A. §§ 24-12-101et seq. to prescribe retirement benefits for eligible mayors.
Question 2 — If a former city council of a second class city passes anordinance providing a retirement pension for a former mayor, may asubsequent city council repeal such retirement benefit ordinance?
It is my opinion that a city council may repeal a retirement benefit ordinance, but only to the extent that the repeal would affect employees who have not vested in the retirement plan provided by the repealed ordinance. The city council may not impair the rights of vested employees to receive retirement benefits under the plan.
The question that you have presented is one that implicates the constitutional prohibition of the impairment of contracts. This prohibition is set forth in article 2, § 17 of the Arkansas Constitution and in article 1, § 10 of the U.S. Constitution. The Arkansas Supreme Court has held that legislation which operates retroactively to impair existing contractual rights violates this constitutional principle. SeeJones v. Cheney, 253 Ark. 926, 489 S.W.2d 785 (1973); Pyle v. Webb,253 Ark. 940, 489 S.W.2d 796 (1973). Both Cheney and Pyle involved employees who were fully vested in retirement systems. The Arkansas Supreme Court has also embraced the theory that a public employee, by accepting the terms and conditions of a law that provides for pensions to participating employees, enters into a contractual relationship with the public entity who passed the law. See Jones v. Cheney, 253 Ark. 926, 489 S.W.2d 785
(1973), citing Anders v. Nicholson, 111 Fla. 849, 150 So. 639 (1933).
Thus, the former mayor about whom you have inquired, by accepting the terms and conditions of the ordinance providing for the retirement plan, entered into an implied contract with the city.[2] The terms of that implied contract were that the mayor could participate in the retirement plan while employed as mayor, and that if he met the vesting requirements set forth in A.C.A. § 24-12-124, he would be entitled to receive the benefits prescribed by the city council. Subsequent enactments by the city council cannot, under the Arkansas and U.S. Constitutions, impair any rights that the former mayor acquired pursuant to his implied contract with the city.
For these reasons, I conclude that the city council may choose to repeal its retirement plan, but it may not do so in such a way that the repeal violates previously existing, vested contractual rights to receive retirement benefits.
Question 3 — If a former city council of a second class city passes anordinance providing a retirement pension for a former mayor, may suchordinance be repealed by a vote of the city residents?
It is my opinion that, for the reasons set forth in response to Question 2, an ordinance providing a retirement pension for a former mayor who has vested in the retirement plan may not validly be repealed as to that former mayor by a vote of the city residents or by any other means.
However, the qualified voters of a city may, under the authority of A.C.A. §§ 14-55-301 and -302, and Amendment 7 to the Arkansas constitution, repeal such an ordinance to the extent that such repeal would affect non-vested and future employees. This question was addressed in Attorney General Opinion No. 90-036, a copy of which is enclosed.
Question 4 — Is a city of the second class required to pay a formerelected official, namely a city marshal, vacation pay where that personwas never paid vacation pay during his tenure as city marshal?
It is my opinion that the obligation to pay such vacation compensation is a matter that is governed primarily by local ordinance.
City marshals are entitled to receive paid vacation, under the provisions of A.C.A. § 14-52-106. However, the question of whether a marshal can be compensated in cash for unused vacation is a matter that is not specifically addressed by state law. In my opinion, it is a matter that falls within the purview of the city council to determine. The Arkansas Supreme Court has recognized the power of city councils to determine the specifics of city marshals' compensation. See, e.g., City of Greenbriarv. Cotton, 293 Ark. 264, 737 S.W.2d 444 (1987); City of Augusta v.Angelo, 225 Ark. 884, 286 S.W.2d 321 (1956); Conner v. Burnett,216 Ark. 559, 226 S.W.2d 984 (1950).
If a city marshal can establish that a city ordinance entitled him to be paid for unused vacation, and that his entitlement to such pay has not otherwise been impaired, he might have a valid claim against the city for such pay, on the basis of that ordinance. The burden would be upon the marshal to establish the existence of an ordinance entitling him to compensation, as well as his general entitlement to the application of the ordinance. See City of El Dorado v. Faulkner, 107 Ark. 455,155 S.W. 516 (1913).
Even if the marshal were unable to point to a specific ordinance authorizing such pay, he may nevertheless have a valid claim for it (because of the state law entitling him to paid vacation) either on the basis of the theory of quantum meruit (i.e., on the theory that he is entitled to the value of his services provided during time that he otherwise would not have been working, see, e.g., Gladson v. Wilson,196 Ark. 996, 120 S.W.2d 732 (1938)), or on the basis of the theory of unjust enrichment (i.e., on the theory that the city was unjustly enriched by his services during time that he otherwise would not have been working,see, e.g., Conner v. Burnett, 216 Ark. 559, 226 S.W.2d 984 (1950)). That is, a court might hold him entitled to receive such pay on the grounds that he is entitled to the value of the service that he provided to the city during a time when he was not required by state law to be working.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] It should be noted that the payment of retirement benefits under previous laws to eligible mayors who retired prior to March 18, 1985, is continued under the provisions of A.C.A. § 24-12-124(b).
[2] I am assuming that the former mayor in question did not have a separate written contract that would have overridden the provisions of the ordinance or the terms of an implied contract for retirement benefits.