The Honorable Jay Bradford State Senator P.O. Box 8367 Pine Bluff, Arkansas 71611
Dear Senator Bradford:
This official Attorney General's opinion is issued in response to your recent inquiry regarding certain issues related to mayors' retirement benefits.[1] You have presented the following questions:
 (1) Would the provisions of A.C.A. § 14-42-117, which require a mayor to choose between pension programs, be applicable to a mayor who fulfilled the 10-year service requirement pursuant to A.C.A. § 24-12-123 on December 31, 1992?
 (2) If this mayor took a lump sum retirement under a separately maintained city pension plan, has he forfeited the right to seek benefits under A.C.A. § 24-12-123?
 (3) If the person referred to in Questions 1 and 2 above has received the pension funds from the private city program, is eligibility for the state-mandated retirement provisions a matter for the state to deny or the city to deny?
RESPONSE
Question 1— Would the provisions of A.C.A. § 14-42-117 which require amayor to choose between pension programs be applicable to a mayor whofulfilled the 10-year service requirement pursuant to A.C.A. § 24-12-123on December 31, 1992?
It is my opinion that the provisions of A.C.A. § 14-42-117[2] would apply to a mayor who fulfilled the 10-year service requirement pursuant to A.C.A. § 24-12-123[3] on December 31, 1992.
The only scenario in which in might be argued that the provisions of A.C.A. § 14-42-117 would not apply to a particular mayor would be a scenario in which the mayor in question had fully vested in both plans prior to the enactment of A.C.A. § 14-42-117.[4] Under those circumstances, it might well be argued that the enactment of A.C.A. §14-42-117 constituted an impairment of contractual rights, in violation of Article 1, § 10 of the United States Constitution, and Article 2, § 17
of the Arkansas Constitution.
The Arkansas Supreme Court has held that legislation which operates retroactively to affect previously established contractual rights violates this constitutional principle. See Jones v. Cheney,253 Ark. 926, 489 S.W.2d 785 (1973); Pyle v. Webb, 253 Ark. 940,489 S.W.2d 796 (1973). The court has also embraced the theory that a public employee, by accepting the terms and conditions of a law that provides for pensions to participating employees, enters into a contractual relationship with the public entity who passed the law.See Jones v. Cheney, supra, citing Anders v. Nicholson,111 Fla. 849, 150 So. 639 (1933).
The terms of that contract are limited, however, to an agreement that the employee be allowed to participate in the retirement plan while employed in his or her public position, and that if the employee meets the vesting requirements of the plan, he or she will be entitled to receive the plan's prescribed benefits. See Ops. Att'y Gen. Nos. 95-247; 95-071. (It should be noted that both Cheney and Pyle involved fully vested employees.) The contract between the employee and the public entity is not an agreement that the employee will vest. Therefore, an argument that particular legislation has impaired a non-vested public employee's contractual rights regarding a public retirement plan will succeed only if the legislation prohibits the employee from participating in the plan. If the legislation does not affect the employee's right to participate in the plan, it has not impaired the employee's contractual rights
A.C.A. § 14-42-117 was originally enacted in 1989 [Acts 1989, No. 723, § 1]. The mayor whom you have described could not have vested in the plan provided by A.C.A. § 24-12-123 until 1992. Therefore, at the time A.C.A. § 14-42-117 was enacted, the mayor had only a contractual right to participate in the retirement plan provided by A.C.A. § 24-12-123. Because the mayor had not vested in the plan provided by A.C.A. § 24-12-123 at that time, the mayor did not have a contractual right to collect benefits under that plan.
Therefore, because A.C.A. § 14-42-117 did not affect the mayor's right to participate in the plan provided by A.C.A. § 24-12-123, it did not impair the mayor's contractual rights. Accordingly, I must conclude that the provisions of A.C.A. § 14-42-117 appropriately apply to this mayor. This mayor therefore may not receive benefits from both the city plan and the plan provided by A.C.A. § 24-12-123 for the same period of service.
Question 2 — If this mayor took a lump sum retirement under a separatelymaintained city pension plan, has he forfeited the right to seek benefitsunder A.C.A. § 24-12-123?
It is my opinion that a mayor who takes a lump sum retirement under a separately maintained city pension plan has forfeited the right to seek benefits under A.C.A. § 24-12-123, if those benefits arise out of the same period of service for which the lump sum was paid (and if the mayor was not vested in the plan provided by A.C.A. § 24-12-123 at the time of the enactment of A.C.A. § 14-42-117).[5]
The provisions of A.C.A. § 14-42-117 require an election between benefits for the same period of service to the city, and prohibit collection of benefits from two different sources for the same period of service to the city.
Therefore, if the mayor in question received a lump sum retirement from a separately maintained city pension plan, that mayor may not seek benefits under A.C.A. § 24-12-123 for the same period of service to the city for which the lump sum was paid. If the mayor is seeking benefits under A.C.A. § 24-12-123 for a different period of service to the city than that for which the lump sum was paid, the payment of such benefits is not prohibited by A.C.A. § 14-42-117.[6]
Question 3 — If the person referred to in Questions 1 and 2 above hasreceived the pension funds from the private city program, is eligibilityfor the state-mandated retirement provisions a matter for the state todeny or the city to deny?
It is my opinion that the determination of eligibility for benefits under A.C.A. § 24-12-123 is made in the first instance by the city, under the governance of state law, and subject to judicial review.
If a city employee or official has received benefits from a separate city retirement fund, and subsequently requests benefits pursuant to A.C.A. §24-12-123, the request for benefits clearly must be presented first to the city. It is therefore the city who, in the first instance, must address the request, by determining whether the employee or official is eligible to receive benefits under A.C.A. § 24-12-123, and by then acting in accordance with its determination, either paying or denying the benefits. Because eligibility for benefits under A.C.A. § 24-12-123 is a matter of state law, the city, in making its determination of eligibility under A.C.A. § 24-12-123, must be guided by and act in accordance with state law,[7] (including A.C.A. § 14-42-117).
Of course, if the employee or official disagrees with the city's determination of eligibility, he or she can challenge that determination in court. If the employee or official makes such a challenge, the ultimate determination of the employee's or official's eligibility for benefits is out of the city's hands and will be directed by the court in accordance with its interpretation of the facts under state law.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] Your opinion request also presented questions regarding certain city-related issues that are unrelated to the retirement benefit questions. Those questions are addressed separately in Attorney General Opinion No. 96-383.
[2] A.C.A. § 14-42-117 states:
 Notwithstanding any other law to the contrary, any employee of a first-class city, second-class city, or incorporated town, and any elected official of a first-class city, second-class city, or incorporated town who is entitled by an act of the General Assembly to retirement benefits for service as such employee or elected official and who also participates in another retirement plan established by the city for the same period of service shall be entitled to only one (1) retirement benefit for the same period of service to the municipality, provided that no elected official may withdraw in a lump sum or roll over into a private account any accumulated benefits established by the municipality for which the official was employed and at the same time receive a pension as provided for under an act of the General Assembly, and the employee or elected official may choose whether to receive the retirement benefit provided by law or provided by the plan offered by the municipality.
[3] A.C.A. § 24-12-123(a)(1) states:
 In all cities of the first class in this state, any person who shall serve as mayor of the city for a period of not less than ten (10) years, upon reaching age sixty (60) years, or any person who shall serve as mayor of the city for a period of not less than twenty (20) years, without regard to age, shall be entitled to retire at an annual retirement benefit during the remainder of his natural life, payable at the rate of one-half (1/2) of the salary payable to the mayor at the time of his retirement.
The statute then goes on to describe the manner in which benefits are to be paid.
[4] It should be noted that I do not here address the question of whether a fully vested public employee may, in the absence of statutory prohibition, collect benefits that cover the same period of service, from two different public retirement plans.
[5] Again, I do not here reach the question of whether a mayor who had vested in both plans prior to the enactment of A.C.A. § 14-42-117 would be required to make a choice between plans.
[6] This is not to say that payment of such benefits could not be prohibited by the terms of a private contractual agreement between the city and the mayor. Payment under such circumstances simply is not prohibited by A.C.A. § 14-42-117.
[7] Retirement benefits are not a "municipal affair." See A.C.A. §14-43-601(a)(1)(F).