The Honorable Gilbert Baker State Senator #17 Cooper Lane Conway, AR 72034
Dear Senator Baker:
You have requested my opinion concerning a pension plan created by the City of Conway.
You state that in the 1960's, the City of Conway passed an ordinance establishing a nonuniformed pension program, and required all nonuniformed employees, in addition to those elected officials enumerated in A.C.A. § 24-12-101, to participate in the program. According to Attorney General Opinion No. 2002-323, this practice was not authorized with respect to nonuniformed employees other than those enumerated officials. In the most recent legislative session, the General Assembly passed Act 1281 of 2003, without an emergency clause, which authorized nonuniformed employees other than those enumerated officials to participate in such programs.
In light of this background, you have asked:
 (1) With Act 1281 of 2003 having been passed without an emergency clause, may new employees enroll in the nonuniformed pension program of the city now, or must they wait until Act 1281 is effective?
 (2) Under Act 1281 of 2003, is participation on the part of eligible nonuniformed employees voluntary, or must they enroll automatically? Can the city, by ordinance, require all nonuniformed employees to participate in the program authorized by A.C.A. § 42-12-101?
 (3) For current employees who are participating in the program prior to enactment of Act 1281 of 2003, are they required to continue participating, or may they withdraw monies that they have contributed and end their participation?
 (4) Are former or current employees who participated in the program prior to Act 1281 of 2003 affected in their ability to draw their pension when eligible or continue to contribute and retire pursuant to this pension program?
 (5) With respect to such employees, is their relationship to this pension program one of have a de facto pension program or quasi contract, where both parties (the City and the employees) believed in good faith that the pension program was established and authorized pursuant to ordinance and state law, and have operated on that assumption for approximately 40 years?
RESPONSE
Question 1 — With Act 1281 of 2003 having been passed without anemergency clause, may new employees enroll in the nonuniformed employees'pension program of the city now, or must they wait until Act 1281 iseffective?
It is my opinion that new employees who are not enumerated in A.C.A. §24-12-101(1) may not enroll in a nonuniformed employees' pension program enacted pursuant to A.C.A. § 24-12-101 et seq. until the effective date of Act 1281 of 2003. Act 1281 of 2001 will go into effect on July 16, 2003. See Op. Att'y Gen. No. 2003-119. Until Act 1281 becomes effective, the previous law will be in effect. Under the previous law, only the officials who were specifically enumerated in A.C.A. § 24-12-101 were entitled to participate in the pension program authorized under that set of statutes, as explained in Op. Att'y Gen. No. 2002-323.
Question 2 — Under Act 1281 of 2003, is participation on the part ofeligible nonuniformed employees voluntary, or must they enrollautomatically? Can the city, by ordinance, require all nonuniformedemployees to participate in the program authorized by A.C.A. §42-12-101?
It is my opinion that nonuniformed employees are not required to participate in a local pension program for nonuniformed employees, established under the authority of A.C.A. § 24-12-101 through — 118 (as amended by Act 1281 of 2001).
The language of A.C.A. § 24-12-101(1) explicitly supports this conclusion. It states:
 As used in this act, unless the context otherwise requires," paid nonuniformed employees" means:
 (1) The mayor, city attorney, city treasurer, city clerk, or municipal judge of any city to which this act is applicable when the mayor, city attorney, city treasurer, city clerk, or municipal judge elects to be so included; and
 (2) May include the other full time, paid nonuniformed employees of the city.
A.C.A. § 24-12-101 (emphasis added).
The above-emphasized language clearly permits eligible employees the discretion to elect to participate in the program. Moreover, the language plainly indicates that the election is made by the employee, rather than by the city. Nothing in the language of this statute, or of any of the other statutes in this set of laws governing pension programs for nonuniformed employees expresses any intent that participation be mandatory. Nor is there any indication that the city should be permitted to make participation mandatory. Indeed, such a requirement, created by the city, would be directly contrary to the language quoted above, which grants the election choice to the employee. I note that although the emphasized language is set forth in the paragraph pertaining to the specifically enumerated employees, and not in the paragraph pertaining to the newly-permitted employees, there is nothing in the statute that indicates any intent that the newly-permitted employees should be treated differently in this regard from the specifically-enumerated ones.
Because the statute instead expresses intent that participation be voluntary, it is my opinion that the city cannot require its nonuniformed employees to participate in the pension program. Such a requirement would be contrary to state law. Cities are prohibited from enacting legislation that is contrary to state law. See A.C.A. §§ 14-43-601, -602; 14-42-307;14-54-101; 14-55-101; 14-42-502; 14-43-601(a)(1)(F) and (a)(2).
Question 3 — For current employees who are participating in the programprior to enactment of Act 1281 of 2003, are they required to continueparticipating, or may they withdraw monies that they have contributed andend their participation?
It is my opinion that current employees who are participating in the program are not entitled to withdraw their contributions and end their participation unless they terminate their employment with the city.
Permitting random withdrawal from the system by current employees not only could have a substantial impact upon the actuarial soundness of the fund, but could also carry significant implications under federal tax laws concerning the status of the fund itself. Although participation is not mandatory, once an employee begins participating, the law does not permit withdrawal unless the employee terminates employment with the city. Only under these circumstances is a refund explicitly permitted under the law. A.C.A. § 24-12-111(d)(1).
Accordingly, I conclude that current employees who are participating in the program are not entitled to withdraw their contributions and end their participation unless they terminate their employment with the city.
Question 4 — Are former or current employees who participated in theprogram prior to Act 1281 of 2003 affected in their ability to draw theirpension when eligible or continue to contribute and retire pursuant tothis pension program?
It is my opinion that any employees who have participated in the program prior to the enactment of Act 1281 of 2003 are not affected in their ability to continue to contribute, to retire, or to draw benefits as provided under the terms of the program.
In my opinion, these employees have an enforceable implied contract with the city. The Arkansas Supreme Court has held that an implied contract arises under circumstances which indicate that the parties intended to make a contract. See Steed v. Busby, 268 Ark. 1, 593 S.W.2d 34 (1980). The facts as you have described them indicate that both the city and these employees intended to enter into a contract under which the terms of A.C.A. § 24-12-101 et seq. would be applicable. This conclusion is supported by dicta contained in Jones v. Cheney, 253 Ark. 926,489 S.W.2d 785 (1973). In that case, the Arkansas Supreme Court cited with approval a Florida case in which the Florida court found that certain public employees' acceptance of the terms of legislation creating a pension fund resulted in a contractual relationship between those employees and the governmental entity. The court stated:
 In Anders v. Nicholson, 111 Fla. 849, 150 So. 639 (1933), [it] was held under a municipal ordinance providing for pensions to employees who should elect to participate in, and contribute to, the pension fund, that a public employee by acceptance of the terms and conditions of the enactment entered into a contractual relationship with the city[.]
Jones v. Cheney, 253 Ark. at 931, 489 S.W.2d at 788.
Moreover, even though an argument could be made that such a contract was void from its inception on the grounds that it was not authorized for these employees by A.C.A. § 24-12-101, and therefore unenforceable, a viable response to such an argument could be presented on the basis of an exception to the general rule that void contracts are unenforceable. Under that exception, a party who is unaware of the illegality of a contract, or who is not in pari delicto (in equal fault) may be able to enforce his rights under the contract. See, e.g., City Nat'l Bank of Ft.Smith v. First Nat'l Bank Trust Co. of Rogers, 22 Ark. App. 5,732 S.W.2d 489 (1987).
For these reasons, it is my opinion that if a court were faced with the question of whether these employees are entitled to the terms of the pension program, even though their participation was not authorized by law, the court would hold, on the basis of the cited precedents, that these employees are entitled.
Question 5 — With respect to such employees, is their relationship tothis pension program one of have a de facto pension program or quasicontract, where both parties (the City and the employees) believed ingood faith that the pension program was established and authorizedpursuant to ordinance and state law, and have operated on that assumptionfor approximately 40 years?
See response to Question 4.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General