Gail H. Stone, Executive Director Arkansas Public Employees Retirement System 124 W. Capitol, Suite 400 Little Rock, AR 72201
Dear Ms. Stone:
You have presented the following question for my opinion:
 Is it constitutional for Acts 1374 and 1375 of 2003 to unilaterally separate municipal and district court clerks from their existing local retirement plans and place them in the Arkansas Public Employees Retirement System (APERS)?
RESPONSE
Before responding to your question, I must begin with the observation that legislation is entitled to a strong presumption of constitutionality. Before an act will be held unconstitutional, the incompatibility between the act and the constitution must be clear; any doubt as to constitutionality of a statute must be resolved in favor of its constitutionality. Eady v. Lansford, 351 Ark. 249, 92 S.W.3d 57
(2002).
Despite this presumption of constitutionality, it is my opinion that Acts 1374 and 1375 of 2003 raise certain constitutional concerns as applied to clerks who will have already vested in their local systems as of January 1, 2005. I will explain this conclusion more fully below.
Act 1374 of 2003 creates the Arkansas District Judge's Retirement System, closes the municipal judges and clerks retirement systems, and contains related provisions concerning the participation and retirement of district and municipal judges under the new system. Act 1375 of 2003
provides for the transfer of all assets of local municipal judge's retirement funds to the newly created District Judge's Retirement System, and requires that all municipal and district court clerks become members of APERS as of January 1, 2005.
You have raised three specific concerns about these Acts. First, you express concern that some clerks may not qualify for inclusion in APERS because they do not meet the required number of hours worked or wages earned, under the statutes governing APERS. See, e.g., A.C.A. §24-4-101(17)(B)(viii) and (ix). Second, you note that in many instances, clerks will not be eligible to draw the APERS portion of their retirement benefits as early as they could draw benefits under the provisions of their local plans. Third, you express concern that in some instances, clerks who are retired from APERS but are currently participating in a local clerks' retirement plan may be barred by the APERS statutes from reestablishing membership in APERS.
It is my opinion that your first and third concerns are not problematic. Even if the statutory provisions that were in place governing membership in APERS prior to the passage of Act 1375 appear facially to exclude certain clerks on the grounds of hours worked or wages earned, or because of previous retirement from APERS, those provisions have been overridden with regard to municipal clerks by Act 1375. Because Act 1375 mandates the inclusion of these clerks in APERS, and because Act 1375 was enacted later in time than those other provisions of the previously existing APERS statutes, the inclusion of clerks in the system must take precedence, and any previously existing APERS statutes that would otherwise have excluded certain municipal clerks because of hours worked, wages earned, or previous retirement from APERS will not have the effect of excluding municipal clerks for that reason who are required to transfer to APERS as of January 1, 2005. Under the "later in time" principle, if two acts that address the same subject are in conflict, the one that is passed later in time will govern. Cole v. Harris,330 Ark. 420, 953 S.W.2d 586 (1997); Daniels, Director v. City of FortSmith, 268 Ark. 157, 594 S.W.2d 238 (1980). See also Uilkie v. State,309 Ark. 48, 827 S.W.2d 131 (1992).
Your second expressed concern, however, touches upon the constitutionally problematic aspect of Act 1375, at least as this Act is applied to clerks who will have vested in their local retirement systems as of January 1, 2005. This problem with Act 1375 arises out of the constitutional prohibition against legislation that impairs contractual rights. This prohibition is set forth in Article 2, § 17 of the Arkansas Constitution and in Article 1, § 10 of the U.S. Constitution. The Arkansas Supreme Court has held that legislation violates this constitutional principle if it operates retroactively so as to divest previously existing contractual rights. See Pyle v. Webb, 253 Ark. 940, 489 S.W.2d 796 (1973); Jones v.Cheney, 253 Ark. 926, 489 S.W.2d 785 (1973). In both Cheney and Pyle, the court addressed legislation that retroactively divested certain employees of their vested rights to receive retirement benefits. In both instances, the court held the legislation to be unconstitutional as an impairment of contract.
The Arkansas Supreme Court has embraced the theory that a public employee, by accepting the terms and conditions of a law that provides for pensions to participating employees, enters into a contractual relationship with the public entity who passed the law. See Cheney,supra, citing Anders v. Nicholson, 111 Fla. 849, 150 So. 639 (1933). This contractual right can take two forms. For employees who have not yet vested in the system, the contractual right is not a right to vest in the retirement system. Rather, it is simply a right to participate in the system while eligible and while the system exists. For employees who have vested in the system, the contractual right is a right to receive the benefits that were promised upon vesting. It is my opinion that Act 1375 does not impair any contractual rights of employees who will not have vested in the system as of the date of transfer to the new system. The contractual right of these non-vested employees was a right to participate in the system while eligible and while the system existed. The discontinuation of the system does not violate any of the non-vested employees' contractual rights.
However, Act 1375 could have the effect of impairing the rights of employees who will have vested in the local system as of January 1, 2005 (the date of transfer to the new system.) Act 1375 provides for the following disposition of the assets of the local systems:
 (a) If the Arkansas District Judge's Retirement System is created, a local government that has established a municipal judge's retirement fund shall contribute an amount of money to the District Judge's Retirement System that shall represent the actuarially determined accrued liability for those court clerks and former court clerks who are covered by the municipal judge's retirement fund on December 31, 2004.
 (b) The assets of the local municipal judge's retirement fund equal to the benefit obligations for the court clerks under subsection (a) of this section shall be paid to the District Judge's Retirement System on January 1, 2005.
 (c)(1) If the local municipal judge's retirement fund does not have sufficient funds available to pay the benefit obligations for the court clerks under subsection (a) of this section to the District Judge's Retirement System, then the remaining amount of actuarially determined accrued liability shall be paid on or before December 31 each year for up to the next thirty (30) years based on a thirty-year amortization period.
 (2) If the amount in the local municipal judge retirement fund is greater than the actuarially determined amount of the liabilities to be transferred to the district judge's retirement system, that excess may be retained by the local government for the sole purpose of paying for the retirement benefits of district court clerks.
Acts 2003, No. 1375, § 1 (A.C.A. § 24-8-902).
Although the above quoted provisions require a calculation of the amounts owed to clerks, it permits payment of those amounts out of the local system's assets only in the event that such amounts are still available after transfer of all assets to the newly created District Judge Retirement System. If, after payment of all of the local fund's assets to the new District Judge Retirement System, the municipality does not have an excess amount from which to pay obligations to vested clerks, those clerks presumably must receive their benefits from APERS. Yet Act 1375 contains no provision protecting the eligibility of these vested clerks to receive such benefits. Nor does the Act provide that these clerks are to be treated as participants in a reciprocal system, which would have the effect of protecting their vested rights. See A.C.A. § 24-2-402.
In this regard, I note that Act 1374, in contrast, does include a provision that is designed to protect the vested rights of municipal judges. That Act states:
 (b)(2) This subchapter is not intended to decrease the benefits earned or increase the eligibility requirements for members who were participants in a local plan, as authorized by law, prior to January 1, 2005.
 (3) The benefits earned and those eligibility requirements shall transfer to the Arkansas District Judge Retirement System.
Acts 2003, No. 1374, § 1 (A.C.A. § 24-8-812(b)(2) and (3).
Act 1375 does not contain a provision of this nature that is intended to protect the contractual rights of vested clerks. Thus, a clerk who had vested in the local system and who was fully entitled to retire and receive benefits immediately as of January 1, 2005, could, as the Act is worded, be required to meet the more stringent vesting requirements of APERS after transfer to APERS before being entitled to retire and receive benefits. Act 1375 simply provides that clerks are to transfer to APERS as of January 1, 2005, and does not in any way address the fact that APERS may impose more stringent eligibility requirements or the fact that some clerks may already have vested rights. Act 1375 provides no basis whatsoever for re-interpreting the eligibility requirements of APERS as applied to vested municipal clerks who have transferred into the system.
It is for this reason that despite the presumption of constitutionality, Act 1375 in my opinion raises a constitutional concern under Article 2, § 17 of the Arkansas Constitution and in Article 1, § 10 of the U.S. Constitution.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General