The Honorable Sue Madison State Senator
573 Rock Cliff Road Fayetteville, Arkansas 72701-3809
Dear Senator Madison:
I am writing in response to your request for a supplemental opinion as a follow-up to a previous opinion (Op. Att'y Gen. 2009-049) issued to you regarding the City of Fayetteville Firemen's Pension and Relief Fund (hereinafter "Fund"). The question presented in Opinion Op. 2009-049 was whether action by the Fund's Board of Trustees in reducing benefits to retirees would violate Arkansas Constitution article 2, section 17, the so-called "Contract Clause," which in relevant part prohibits the passage of any "law impairing the obligation of contracts. . . ."[1] As you know, I concluded that such action "may well constitute an unconstitutional impairment of the obligation of contract" with respect to benefits in effect when members' rights became vested. Op. Att'y Gen. 2009-049 at 5. The answer was less clear regarding a reduction of a benefit increase occurring after vesting.Id.
The questions addressed in Opinion 2009-049 were asked generally, without regard to any particular benefit increase or reduction. You have now asked the following, more pointed question concerning a benefit reduction:
 Is there any statutory or constitutional provision that would prohibit the Firemen's Pension and Relief Fund Board from reducing pension benefit amounts, which had been previously raised, as long as such *Page 2 
benefits are not reduced below the 50% of ending pay amount established by A.C.A. § 24-11-818?
You have also presented the following additional question concerning the Board's Authority:
 Does A.C.A. § 24-11-807(d)(2), which states, "The board of trustees decreases all payments to all eligible beneficiaries by an equal portion for the fiscal year and does not allow the assets in the fund to become fully depleted," provide the Board further statutory authority to decrease benefits to prevent funds depletion?
As background for this second question, you report that the Board "is only considering reducing benefits to pensioners (which were legally raised to 90% of ending salary a few years ago) because of actuarial reports showing depletion of the pension fund within a few years if pensions are not reduced."
RESPONSE
In response to your first question, there is no express statutory prohibition; but as I have previously suggested, the absence of such a statute may not be determinative of the Board's authority to effect a reduction. Regarding a possible constitutional prohibition, while it is my opinion that such a reduction would be constitutionally suspect, the question may ultimately require judicial resolution. The answer to your second question is "no," in my opinion.
Question 1 — Is there any statutory or constitutionalprovision that would prohibit the Firemen's Pension and Relief FundBoard from reducing pension benefit amounts, which had beenpreviously raised, as long as such benefits are not reduced belowthe 50% of ending pay amount establishedby A.C.A. § 24-11-818?
There is no express statute prohibiting a benefit reduction by the Board. In my opinion, however, the absence of such a statute is not necessarily determinative of the Board's authority to effect a reduction. As you know, I opined in Op. Att'y Gen. 2009-049 that "the Board must act within the confines of the statutes in seeking to reduce benefits[,]" and that a court faced with the constitutional issue might decide that the Board lacks general authority under the statutes to reduce benefits.Id. at 6. I explained that in my view, this possibility follows from the *Page 3 
absence of a statute plainly authorizing a reduction, other than under certain specified circumstances. Id.
I should nevertheless emphasize the tentative nature of the discussion of this issue in Opinion 2009-049. I did not opine definitively that the Board cannot reduce benefits. The statutes are not entirely clear and no court has addressed the matter. The question in my opinion invites judicial or legislative clarification. It also bears noting that I am not the Board of Trustees' counsel in this matter. It is my understanding that local counsel has advised the Board concerning its authority to reduce benefits under the particular circumstances. The Board may certainly wish to rely upon that advice, pending clarification of the statutes.
Turning to the constitutional question, I will not entirely restate the substance of Opinion 2002-098 regarding the possible impairment of a contractual obligation contrary to Ark. Const. art. 2, § 17. Instead, to summarize, I concluded generally that a reduction in benefits that were in effect upon vesting would likely constitute an unconstitutional impairment of contract, whereas a benefit increase occurring subsequent to vesting may not give rise to protected contractual rights. You have now in essence asked whether there would be an unconstitutional impairment if the reduced benefits remained above the amount established by A.C.A. § 24-11-818, which provides in relevant part:
 Any pension fund member who has served in a fire department in the State of Arkansas for a period of twenty (20) years or more, the last five (5) years of which shall have been consecutive, shall be entitled to be retired and receive from the fund a monthly pension equal to one-half (1/2) of the salary attached to the rank he or she held as a volunteer, part-paid, or full-paid member.
A.C.A. § 24-11-818(a) (2) (Repl. 2002).
This is the "50% of ending pay amount" referenced in your question. I will limit my discussion to those members who will have established "[t]he right to participate in the fund" prior to a reduction in benefits that had previously been increased by the Board.[2] A.C.A. § 24-11-818(b). Subsection 24-11-818(b) states in full regarding this right of participation: *Page 4 
 Any fire fighter who shall have completed the period of service as provided for in this section shall receive from the board a certificate showing that he or she has completed the term of service required and is entitled to participate in all the benefits provided for in this act upon compliance with, and subject to, all the other terms and conditions of this act, whether he or she severs his or her connections or continues in service at the expiration of the time as set out in subdivision (a)(2) of this section. The right to participate in the fund shall become a vested right and shall not be lost by the termination of his or her services with or without cause.
A.C.A. § 24-11-818(b) (Repl. 2002 (emphasis added).
In my opinion, the most likely scenario for an "impairment" argument involves a reduction of benefits that had been increased before this "right to participate" became "vested." The argument would be that these "vested" members have a constitutionally-protected contractual right to all benefits under the fund, including all increases above the 50% of ending pay amount.
I cannot predict with certainty how our court would resolve this claim. In my opinion, the issue may be framed as follows: Are the benefit increases part of the terms of the retirement benefit contract that were fixed at the time of retirement? See 16B Am. Jur. 2d ConstitutionalLaw § 721 (cited in Op. Att'y Gen. 2009-049). It seems clear that such terms are ascertained by reference to the law as it stood when the vested members retired. Op. 2009-049 at 4-5. See alsoJones v. Cheney, 253 Ark. 926, 937-938, 489 S.W.2d 785 (1973). In this regard, the pension law plainly provided for the benefit increases. See A.C.A. § 24-11-102(a) (Repl. 2002) (authorizing the board of trustees to "increase benefits for future or current retired members and beneficiaries. . . .") The increases at issue presumably were approved in compliance with certain specified conditions, including an actuarial valuation "reflecting that the level of contributions and other income under the . . . fund is sufficient to amortize the unfunded liabilities resulting from the benefit increase over a thirty-year period[.]" Benefit increases are thus apparently funded at least in part through employee contributions. This likely supports the "impairment" argument that the benefit increases were earned, and are part of an enforceable contract. See Robinson v. Taylor,342 Ark. 459, 463, 463, 29 S.W.3d 691 (2000 (discussing the holding in Cheney, supra, that a retirement system based on voluntary contributions from member employees *Page 5 
"represents delayed compensation for services rendered in the past due under a contractual obligation. . . .")
This argument might be countered by citing A.C.A. § 24-11-818 (Repl. 2002), wherein it provides that fire fighters who have complied with the act's terms and conditions will receive a certificate showing that they are "entitled to participate in all the benefits provided for in thisact. . . ." (Emphasis added.) The original act establishing the pension fund, Act 491 of 1921, did not include the authority to approve benefit increases. This authority, found at A.C.A. §§ 24-11-101 — 104, was instituted by a later enactment, Act 839 of 1979. It might therefore be contended that benefit increases pursuant to this later enactment are not part of the pension benefits that members were assured of receiving upon fulfilling the requirements created by the pension act. Seeagain A.C.A. § 24-11-818.
While this argument has some appeal, I believe it may be undermined by noting that the so-called "vesting" language of section 24-11-818 speaks in terms of a "right to participate in the fund" which is "not lost by the termination of . . . services. . . ." Id. at (b) (see language set out above). This suggests that the statute is focused on establishing express requirements for participation in the fund, and is not concerned with defining the particular benefits when it refers to a "vested right," i.e., it is not referring to "vesting" in a constitutional sense.
According to my research, this would present a case of first impression for the court. We know that a contributory plan such as the one at issue gives rise to "vested" rights for purposes of the Contract Clause. See Cheney, supra. But judicial clarification will likely be necessary in order to definitively determine whether the benefit increases at issue are part of these constitutionally protected rights.
Question 2 — Does A.C.A. § 24-11-807(d)(2), which states,"The board of trustees decreases all payments to all eligiblebeneficiaries by an equal portion for the fiscal year and does notallow the assets in the fund to become fully depleted," provide theBoard further statutory authority to decrease benefits to preventfunds depletion?
My predecessor addressed a similar question and concluded that this provision, which authorizes the proration of benefits, applies in the event the pension fund is unable to pay full benefits in the current fiscal year. Op. Att'y Gen. 2005-041 at *Page 6 
7-9 (response to Question 4) (copy enclosed). I fully concur, and refer you to the opinion for the analysis.
Because you have not indicated that the Fund is currently unable to pay benefits, it is my opinion that the answer to this question is "no."
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:EAW/cyh
Enclosure
[1] You also asked whether members of the Board and the City "would be exposed to liability should a lawsuit by filed on behalf of any retiree?" I declined to speculate in response to that question because of the intensely factual nature of such a claim. Op. Att'y Gen. 2009-049 at 7.
[2] As noted in Op. 2009-049 at 5, benefit increases are authorized under A.C.A. §§ 24-11-101 — 104 (Repl. 2002).