HOYTE R. PYLE, ET AL *v.* JOHN B. WEBB

5-5957                                         489 S.W. 2d 796

Opinion delivered February 2, 1973

*Warren & Bullion,* for appellants.

*Gene Worsham,* for appellee.

DAVID SOLOMAN, Special Justice. Appellee brought this action against Appellants, who constitute the Board of Directors of the Teacher Retirement System of the State of Arkansas and its Executive Director.

Appellee was a public school teacher in Arkansas until 1959, when he became an employee of the Arkansas Department of Education. At this time he was contributing to the Teachers Retirement System, which he continued to do until 1961. Then his agency in the Department of Education was placed in another state agency, and this terminated his rights to make contributions to the retirement system, the job classification being other than a "Teacher" under Act 93 of 1957 as Amended.

Appellee became sixty years of age on January 31st, 1964, and applied for retirement benefits effective July 1st, 1964, having twenty-nine years service under the Teacher Retirement System. Appellants approved the application and made regular monthly annuity payments from July 1st, 1964. Appellee continued his employment with the State of Arkansas, and his agency is still not a part of the Arkansas Department of Education. In 1964 Appellee was not eligible for membership in the State Employees Retirement System.

Act 624 of 1969 placed a limitation on persons receiving annuities from the Teachers Retirement System

who were employed by the State of Arkansas in a position covered by the State Employees Retirement System. Appellee's position was covered by the State Employees Retirement System by Act 480 of 1965, at a time when he was drawing his Teacher Retirement annuity.

Appellants discontinued the annuity payments to Appellee effective July 1st, 1969, under the authority of Act 624 of 1969, since Appellee worked full time for the State of Arkansas. Appellee then instituted this action, seeking a Declaratory Judgment construing his' rights under the Teachers Retirement System, and for judgment for his annuity payments.

The Pulaski Circuit Court in the Declaratory Judgment action determined that Appellee's rights to the annuity under the Teachers Retirement System vested in 1964, prior to the legislative action in 1969, and could not be divested by this subsequent legislation. Thereupon, Appellee was given judgment for the amount of the annuity payments unpaid after July 1st, 1969, and this Appeal resulted.

The question confronting this Court stated as simply as possible is:

"Once a member of the Teachers Retirement System qualifies for an annuity, can subsequent legislative action remove the member's qualifications?"

Although we find no cases in this jurisdiction directly in point, and although we find a conflict in the answer from other jurisdictions, we have reached the conclusion that the Circuit Court correctly decided this matter and should be affirmed.

An attempt has been made to distinguish between the pension plans under which voluntary contributions are made by the member, or involuntary contributions are made as a part of employment; or to distinguish between pension plans which are "money purchase plans" or "benefit formula plans"; or to distinguish between pensions and retirement benefits. We feel none of these distinctions have any bearing in this case. Plans in

which both Employer and Employee contribute have been determined by this Court to be compensation to the Employee. In *Daggett* v. *St. Francis Levee District,* 226 Ark. 545, 291 S.W. 2d 254, we said:

"It can not be doubted that a retirement allowance financed over a period of years by the joint contribution of the employer and the employees represents compensation rather than a mere gratuity."

This was reaffirmed by us in *Chandler* v. *Board of Trustees of the Teacher Retirement System of the State of Ark.,* 236 Ark. 256, 365 S.W. 2d 447:

"A retirement allowance represents compensation paid to the recipient."

See also *Commissioner of Labor* v. *Renfroe,* opinion delivered October 30, 1972.

We must come to the conclusion then that the plan to which Appellee made contributions is contractual in nature and a part of the contract of employment between Appellee, his employer, and the State of Arkansas.

To reach our conclusion it is necessary to find the retroactive aspect of Act 624 of 1969 unconstitutional as applied to the situation in this case. This Court has consistently held that retroactive laws are invalid if they impair the obligations of contracts or rights accruing thereunder. In *Gillioz* v. *Kincannon, Judge,* 213 Ark. 1010, 214 S. W. 2d 212, we stated:

"The rule appears to be well settled generally that retrospective laws as the one here, are unconstitutional if they interfere with substantive, or substantial rights, and are valid only when they effect remedies or procedure." .

See also *Coco* v. *Miller,* 193 Ark. 999, where we said:

"...rights conferred by statute are determined according to statutes which were in force when the rights accrued, and are not affected by subsequent

legislation. The Legislature has no power to divest legal or equitable rights previously vested."

See also *Talkington* v. *Turnbow*, 190 Ark. 1138, 83 S.W. 2d 71, and *Robinette* v. *Day*, 210 Ark. 181, 194 S.W. 2d 878. We, therefore, must reach the conclusion that since Appellee on July 1st, 1964, had performed all of the requirements on his part of his retirement plan, he was entitled to benefits and the legislature could not deprive him of these contractual benefits by future action on its part. Vesting, if that is the correct terminology, occurred no later than this point, July, 1964, and could not be divested thereafter. The legislature at this point had done nothing to reserve its right under the contract to future action affecting Appellee on a retroactive basis.

As previously mentioned, there is conflict in the decisions from other States. An annotation in 52 A.L.R. 2d 437 discusses many of these, and we feel that the reasoning and holding of *Hickey* v. *Pittsburg Pension Board*, 378 Pa. 300, 106 A. 2d 233, is expressive of our reasoning, wherein that Court said:

"The Legislature may strengthen the actuarial fibers, but it cannot break the bonds of contractual obligations. Permissible changes, amendments and alterations as provided for by the Legislature can apply only to the conditions in the future, and never to the past. According to the cardinal principle of justice in fair dealings between government and man, as well as between man and man, the parties shall know prior to entering into a business relationship the conditions which shall govern that relationship. Ex post facto legislation is abhorred in criminal law because it stigmatizes with criminality an act entirely innocent when committed. The impairment of contractual obligations by the legislature is equally abhorrent because such impairment changes the blue print of a bridge construction when the spans are half way across the stream."

Affirmed.