The Honorable Peggy Jeffries State Senator 1122 S. Waldron Road, Suite C Fort Smith, AR 72903
Dear Senator Jeffries:
This is in response to your request for an opinion regarding pending Senate Bill 453, which would remove employees of the Arkansas Activities Association ("AAA") from eligibility to participate in the Arkansas Teacher Retirement System. The bill would not affect any credited service already accrued by these employees, but would not allow employees to accrue any more credit in the system. You have asked the following specific questions:
(1) Does SB 453 violate any State or Federal law?
 (2) Does an implied contract exist with the employees of the Arkansas Activities Association?
 (3) If an implied contract does exist and SB 453 were enacted into law, would the employees be successful if they filed a suit?
Question No. 1 — Violation of State and Federal Law
If SB 453 were enacted, it would in all likelihood supersede any conflicting state statutory law. It would not supersede conflicting federal statutory law,[1] nor would it supersede conflicting state or federal constitutional law. The primary constitutional principle that could be called into question by SB 453 is the constitutional prohibition against the impairment of contracts (U.S. Const., art. 1, § 10; Ark. Const., art. 2, § 17). That principle will be discussed in further detail below.
Question 2 — Implied Contract
An implied contract could be found to exist between the state and the employees of the AAA.[2] The Arkansas Supreme Court has held that an implied contract arises under circumstances which indicate that the parties intended to make a contract. See Steed v. Busby, 268 Ark. 1,593 S.W.2d 34 (1980). It is my opinion that if such a contract exists between the state and the AAA employees, it actually consists of two separate contracts, for which separate consideration is exchanged. One such implied contract, if factually established, would be between the state and all employees of the AAA. In order to establish the existence of that implied contract, it would be argued that the General Assembly's inclusion of the AAA in the Teacher Retirement System constitutes a promise by the state to allow all employees of the AAA to participate in and contribute to the teacher retirement system while employed by the AAA, in exchange for those employees' act of working for the AAA, an organization whose sole purpose is to carry out a delegated duty of the state. See Dodson v. Arkansas Activities Association, 468 Ark. 394, 396
(E.D. Ark. 1979).
The other implied contract, if factually established, would be between the state and employees of the AAA who work for the AAA for the number of years stated in the statutes as being a prerequisite to receiving various types of benefits (the "vested employees").[3] In order to establish the existence of that implied contract, it would be argued that the General Assembly's statutory inclusion of the AAA employees in the system constitutes a promise by the state to pay various types of benefits to the vested employees, in exchange for those employees' act of working for the AAA for the stated number of years.
These implied exchanges of consideration could be construed to indicate an intent to make the contracts in question, thus giving rise to "implied contracts." Accordingly, a court considering the question could conceivably find that these implied contracts exist between the state and the employees of the AAA. This conclusion is supported by dicta contained in Jones v. Cheney, 253 Ark. 926, 489 S.W.2d 785 (1973). In that case, the Arkansas Supreme Court cited with approval a Florida case in which the Florida court found that certain public employees' acceptance of the terms of legislation creating a pension fund resulted in a contractual relationship between those employees and the governmental entity. The court stated:
 In Anders v. Nicholson, 111 Fla. 849, 150 So. 639 (1933), is [sic] was held under a municipal ordinance providing for pensions to employees who should elect to participate in, and contribute to, the pension fund, that a public employee by acceptance of the terms and conditions of the enactment entered into a contractual relationship with the city. . . .
Jones v. Cheney, 253 Ark. at 931, 489 S.W.2d at 788.
Thus, the AAA employees could rely upon Cheney as authority for the proposition that their acceptance of the legislation creating the teacher retirement system and allowing them to participate in that system resulted in implied contracts between the state and the AAA employees.
Question 3 — Success of a Possible Suit By AAA Employees
In inquiring about the AAA employees' chances of success in a lawsuit, you have not specified the type of lawsuit about which you are inquiring, nor have you indicated whether your use of the term "successful" in your third question refers only to a result that would impact upon SB 453. Accordingly, I will address various possibilities.
There are at least three possible types of lawsuits that the AAA employees could file as a result of SB 453: (1) A suit to have SB 453 (after enacted into law) declared unconstitutional; (2) A suit to enforce an implied contract; and (3) A suit to obtain equitable relief as a result of no longer being allowed to participate in the teacher retirement system. The AAA employees could also file a lawsuit that combines these approaches.
Suit to Declare SB 453 Unconstitutional
A lawsuit seeking to have SB 453 declared unconstitutional would be possible only if an implied contract were found to exist and were upheld.[4] If this occurred, the employees who could claim affected contractual rights could argue that SB 453 violates the constitutional principle prohibiting the impairment of contractual rights. (U.S. Const., art. 1, § 10; Ark. Const., art. 2, § 17.)
If implied contracts were found to exist between the state and the AAA employees, and if these implied contracts were upheld, the state's contract with the vested employees would be unaffected by SB 453. Section 3 of the bill protects these employees by purporting to protect previously accumulated credited years of service. (Presumably, their vested right to retirement benefits will not be affected.) These vested employees would therefore have no grounds to argue that their contractual rights had been impaired. That is, they would have no grounds for a lawsuit.
The employees who had not worked for the number of years stated in the statutes as being a prerequisite to receiving benefits (the "non-vested employees") are not protected by Section 3 of SB 453. Although Section 3 purports to protect previously accumulated credited years of service, such protection gives nothing to the non-vested employees. The non-vested employees might, therefore, wish to sue. It should be remembered that if an implied contract exists with these employees, it is not a promise by the state to allow the employees to vest. It is a promise to allow them to participate in and contribute to the system while employed by the AAA. Therefore, the non-vested employees might argue that SB 453 impairs their contractual rights by revoking the state's promise to allow them to participate in the teacher retirement system while employed by the AAA. Accordingly, these employees could argue that SB 453 violates the constitutional prohibition against impairment of contracts.
The Arkansas Supreme Court discussed that principle in Pyle v. Webb,253 Ark. 940, 489 S.W.2d 796 (1973) and in Jones v. Cheney, 253 Ark. 926,489 S.W.2d 785 (1973). Both Cheney and Pyle involved state employees who were fully vested in legislatively-created retirement systems, and therefore would not provide direct precedential authority upon which the non-vested employees could rely. Nevertheless, Cheney and Pyle do stand for the proposition that legislation which operates retroactively to divest previously existing contractual rights violates the constitutional prohibition against the impairment of contract. In both cases, the legislature enacted laws that retroactively divested the employees of their rights to receive retirement benefits. In both instances, the court held the legislation unconstitutional, as an impairment of contract. In so holding, the court stated in both cases:
 The Legislature may strengthen the actuarial fibers, but it cannot break the bonds of contractual obligations. Permissible changes, amendments and alterations as provided for by the Legislature can apply only to the conditions in the future, and never to the past.
 Pyle, 253 Ark. at 944, 489 S.W.2d at 798, quoting Hickey v. Pittsburg Pension Board, 378 Pa. 300, 106 A.2d 233 (1954); Cheney, 253 Ark. at 933, 489 S.W.2d at 789-90.
If the non-vested AAA employees could establish valid previously existing contractual rights, they could use Pyle and Cheney as precedent to establish that SB 453 unconstitutionally impairs those contractual rights.
The Implied Contracts May Not Be Valid
Even if implied contracts were found to exist between the state and the AAA employees, they may be invalid, constituting a violation of the constitutional prohibition against the use of public funds for a private purpose. (Ark. Const., art. 16, § 13; Ark. Const., art. 2, § 8). If so, the impairment of contract argument would be unavailable to the employees of the AAA, and they would not have that basis for a suit to have SB 453 declared unconstitutional.
The Arkansas Supreme Court has found the constitutional prohibition against the use of public funds for a private purpose to arise out of the Illegal Exactions Clause (Ark. Const., art. 16, § 13), and out of the Due Process Clause (Ark. Const., art. 2, § 8). See Chandler v. Bd. ofTrustees of the Teacher Retirement System of the State of Arkansas,236 Ark. 256, 365 S.W.2d 447 (1963). Moreover, the Court has found the principle to be violated by the participation of non-state employees in a state retirement system. The employees of the AAA are not state employees. See Dodson v. Arkansas Activities Association,468 F. Supp. 394 (E.D. Ark. 1979). They are employees of a private organization. In Chandler, supra, a taxpayer challenged the fact that employees of the Arkansas Education Association and the Arkansas Teacher Association (private organizations) were allowed to participate in the state Teacher Retirement System. The Arkansas Supreme Court held that the participation of those employees was unconstitutional, amounting to the illegal use of public funds for a private purpose. In addressing the matter, the court mentioned the Arkansas Athletic Association, which was the predecessor to the Arkansas Activities Association, stating:
 There is also proof in the record, and some discussion in the briefs, of a third organization, the Arkansas Athletic Association, which the statutes treat in the same manner as the AEA and the ATA. The complaint, however, sought no relief with respect to the AAA, nor is this organization a party to the case. Hence we express no opinion upon this phase of the case, for a declaratory judgment would not be binding upon an association which is not a party to the case.
 Chandler, 236 Ark. at 261, 365 S.W.2d at 450. This quotation by the court calls into question the constitutionality of the AAA employees being made members of the Teacher Retirement System. The Arkansas Supreme Court, in my opinion, might well conclude that the inclusion of these employees similarly constitutes an unconstitutional use of public funds for a private purpose. For this reason, it could be argued that participation by employees of the Arkansas Activities Association (successor to the Arkansas Athletic Association) in the Teacher Retirement System is an unconstitutional use of public funds for a private purpose, thus making any implied contract based upon that unconstitutional participation void from its inception.[5] It is well established that contracts in violation of the constitution are void and unenforceable. See, e.g., Jones v. Hadfield, 192 Ark. 224, 96 S.W.2d 959, cert. denied, Fidelity Deposit Co. of Maryland v. Jones, 300 U.S. 667 (1936). If an implied contract between the state and the AAA employees is void, the impairment of contract argument would be unavailable to the affected employees. Without this argument, they would not have that basis for a lawsuit seeking to have SB 453 declared unconstitutional.
Suit to Enforce the Contract
Despite the potential invalidity of the AAA employees' implied contract with the state, the non-vested employees could nevertheless sue to enforce the contract on the basis of an exception to the general rule that void contracts are unenforceable. That exception holds that a party who is unaware of the illegality[6] or is not in pari delicto (in equal fault) may be able to enforce his rights under the contract. See, e.g.,City Nat'l Bank of Ft. Smith v. First Nat'l Bank Trust Co. of Rogers,22 Ark. App. 5, 732 S.W.2d 489 (1987). If the AAA employees filed a suit upon the basis of that exception and were successful, their remedy would be continued participation in the teacher retirement system while employed by the AAA.
A lawsuit of this nature would impact on the effectiveness of SB 453, but would not affect its validity.
Suit for Equitable Relief
Finally, even if the AAA employees' contract with the state is void (or if no such contract is ever established), the non-vested employees could sue to obtain equitable relief needed as a result of no longer being allowed to participate in the teacher retirement system. Such a lawsuit could be based on equitable principles such as unjust enrichment, restitution, or quantum meruit, in which case the employees, if they succeeded, would receive a return of any contributions they made to the system. The Arkansas Supreme Court has held that this type of remedy is available even if based upon a situation that involved a contract that was void from its inception. See City of Damascus v. Bivens ConstructionCo., 291 Ark. 600, 726 S.W.2d 677 (1987); McCuistion v. City of SiloamSprings, 268 Ark. 148, 594 S.W.2d 233 (1980).
Again, this type of lawsuit would not affect the validity of SB 453.
Conclusion
I am not in a position to predict the outcome of a hypothetical (or any other) lawsuit. Therefore, do not consider any of the foregoing discussion to constitute an opinion as to the likelihood of the success of any of the discussed legal theories, in the event that they are presented to a court. I have done nothing more than opine as to the law governing the situation surrounding SB 453.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SA/cyh
[1] This office is not in a position to opine in any detail as to the federal statutory law that might be implicated by SB 453. I will note, however, that state retirement plans are generally exempt from the provisions of ERISA.
[2] There are two types of implied contracts: contracts that are implied in fact and contracts that are implied in law. The distinction between the two is that contracts implied in fact arise out of circumstances that indicate that the parties intended to make a contract, whereas contracts implied in law are imposed upon the parties by the court on the basis of equitable principles, even though the parties did not intend to make a contract. Caldwell v. Missouri State LifeIns. Co., 148 Ark. 474, 230 S.W. 566 (1921). The above discussion relates to contracts implied in fact. A discussion of the equitable principles out of which a contract implied in law may arise is set forth, infra,
under the heading "Suit for Equitable Relief."
[3] Under Ark. Code Ann. §§ 24-7-701 et seq., members of the teacher retirement system must work for a stated number of years in order to be entitled to collect various types of benefits.
[4] Such a contract may be held invalid under the constitutional prohibition against the use of public funds for a private purpose. See
discussion, infra.
[5] The ultimate determination of this issue will be one of fact involving an analysis of the nature, function, status, and funding of the AAA.
[6] Because contracts are construed to incorporate the law in existence at the time of the making of the contract, any implied contract between the AAA employees and the state would necessarily incorporate the constitutional prohibition against the use of public funds for a private purpose, and the holding of the Arkansas Supreme Court in Chandler v. Bd.of Trustees of the Teacher Retirement System of the State of Arkansas,236 Ark. 256, 365 S.W.2d 447 (1963). Accordingly, the AAA employees may be considered to have been on notice of the illegality of their participation in the Teacher Retirement System and therefore of the void status of their contract. If so, they could not claim to have been unaware of the illegality, and therefore may not be able to rely upon the exception based upon unawareness.