The Honorable Steve Faris State Senator 29476 Highway 67 Malvern, Arkansas 72104-6833
Dear Senator Faris:
I am writing in response to your request for an opinion concerning the constitutionality of a bill that you are considering proposing at the next regular session of the General Assembly. You ask:
 Specifically, I would like to know whether legislation that would curtail the Deferred Option Retirement Plan ("DROP") found in Ark. Code Ann. § 24-4-801 et seq.
for some categories of state employees who presently are entitled to elect that benefit would be constitutional, assuming that such legislation would operate only prospectively and would not affect those state employees who had elected to participate in the existing DROP before the effective date of the considered legislation.
RESPONSE
As you acknowledge in your request, it is impossible to fully address this question in the abstract, without reference to any specific proposed legislation. It would also be important to know the precise "categories of state employees" to be impacted. I will assume for purposes of your request, however, that the proposed legislation would eliminate the existing DROP for members of the Arkansas Public Employees Retirement System ("APERS") who had not met the eligibility requirements to participate in DROP, and for those who had met the requirements *Page 2 
to be eligible but had not elected to participate as of the time the legislation was enacted.[1]
Your question probably requires consideration of the extent to which the hypothetical proposed legislation would impair or divest so-called "vested rights." As I recently explained in Attorney General Opinion2008-052, the Arkansas Supreme Court has not addressed this complicated issue in the context of APERS. In my opinion, the few Arkansas cases in this area suggest that DROP could be successfully eliminated for those members who will not have met the eligibility requirements (hereinafter the "non-qualified members"). The surrounding issues are far from clear, however, and judicial clarification may be necessary to definitively resolve the matter. In my opinion, the elimination of DROP for the other category — those who will have met the eligibility requirements (hereinafter "qualified members") — would probably be constitutionally suspect.
As stated in Attorney General Opinion 2008-052, a copy of which is enclosed for your convenience, the Arkansas Supreme Court has held that legislation which operates retroactively to divest previously existing contractual rights, and specifically rights arising under a public retirement plan, violates the constitutional prohibition against the impairment of contracts. See Jones v. Cheney, 253 Ark. 926, 489 S.W.2d 785
(1973) and Pyle v. Webb, 253 Ark. 940, 489 S.W.2d 796 (1973). This prohibition is set forth in Article 2, Section 17 of the Arkansas Constitution ("No . . . law impairing the obligation of contracts shall ever be passed,") as well as Article 1, Section 10 of the U. S. Constitution ("No State shall . . . pass any Law impairing the Obligation of Contracts."). As was further explained in Opinion 2008-052:
 Cheney and Pyle reflect the court's adoption of the theory that a public employee, by accepting the terms and conditions of a law that provides for pensions to participating employees, enters into a contractual relationship with the public entity that passed the law. See Cheney, 253 Ark. at 931, citing Anders v. Nicholson, 111 Fla. *Page 3 
849, 150 So. 639 (1933). Under the pertinent terms of that "contract," it is agreed that the employee will be allowed to participate in the retirement plan while employed in his or her public position, and that if the employee meets the plan's vesting requirements, he or she will be entitled to receive the plan's prescribed benefits. Id. See also Op. Att'y Gen. Nos. 95-247 and 95-071. Under this line of cases, a subsequently enacted law that impairs or divests these assured benefits will be challengeable under Ark. Const. art 2, § 17 and U.S. Const. art. 1, § 10.
 In addition, it is generally held, without regard to these constitutional provisions concerning "contracts," that a state may not divest a person of "vested rights" through the enactment of subsequent legislation. This prohibition is applicable to the states by virtue of the Fourteenth Amendment to the United States Constitution. See generally 16A C.J.S. Constitutional Law § 229. The court in Cheney, supra, observed that "[r]ights are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest." 253 Ark. at 936, quoting 16 C.J.S. Constitutional Law § 2 1 5 .
Op. Att'y Gen. 2008-052 at 9.
Bearing in mind these general principles, the most obvious question to be resolved regarding the proposed elimination of DROP is whether the affected members of APERS have a "vested right" or a contractual right to participate in this deferred retirement plan. With regard, first, to the non-qualified members, i.e., those who will not have met the eligibility requirements prior to the elimination of DROP, it seems unlikely that such persons could establish a present property interest in DROP within the above-referenced protections of the Fourteenth Amendment. In my opinion, the question as to the non-qualified members may focus instead on the contractual relationship, if any, between such members and the state. The constitutional issue may be framed as follows:
 `Where . . . it is claimed that the contract clause prohibits a state's statutory modification of its own obligations, the court must determine whether contractual obligations within the purview of the contract clause exist; if so, whether the state legislation . . . impaired *Page 4 
those obligations; and if there is an impairment of contract, whether it is forbidden by the Constitution.' Pineman v. Oechslin, 494 F.Supp. 525, 538 (D.Conn. 1980).
Davis v. Annapolis, 98 Md. App. 707, 713, 635 A.2d 36 (1994
This issue regarding the existence of a contractual obligation was addressed generally in the enclosed Opinion 2008-052. I will not repeat the analysis, but instead refer you to that Opinion, which explains why it currently is unclear whether the non-contributory APERS plan creates contracts between the state and its employees who are members of the system. I will assume for purposes of this opinion that such a contractual relationship can be established, but it must be recognized that the Arkansas Supreme Court has not squarely addressed this threshold question.
Assuming the existence of a contract between both the contributory and the non-contributory members of APERS and the state, so as to possibly implicate the contracts clause, [2] then the question becomes whether the non-qualified members have a constitutionally protected right to participate in DROP, given that they have not met the prerequisite statutory vesting requirements (thirty years of actual service, see n. 1, supra). I addressed a similar question in Opinion 2008-052, regarding certain members of APERS who had not met the service requirements to vest in APERS prior to the enactment of legislation that appeared to affect the rate at which their service was credited. As I pointed out in that opinion, the question depends initially upon their ability to successfully claim that their rights under APERS have already vested, for Contract Clause purposes. I addressed this claim as follows:
 This contention would be countered with the suggestion in Cheney and Pyle that our court equates legal "vesting," in the sense of creating protected contractual benefits, with vesting under the particular provisions of the retirement plan. This would be consistent with the view in some other jurisdictions. See, e.g., Baker v. Oklahoma Firefighters Pension, 1986 OK 8, 718 P.2d 348 (1986) (and cases cited therein). Consistent with this view, my immediate predecessor opined that legislation removing certain employees from their local *Page 5 
retirement plans and placing them in APERS did not impair any contractual rights of employees who did not vest in the system as of the date of transfer to the new system. In Op. Att'y Gen. 2003-318, it was opined that the contractual rights of public employee participants in a pension plan can take two forms: "For employees who have not yet vested in the system, the contractual right is not a right to vest in the retirement system. Rather, it is simply a right to participate in the system while eligible and while the system exists. For employees who have vested in the system, the contractual right is a right to receive the benefits that were promised upon vesting." Id. at 3 (emphasis added).[3] Under this view of contractual rights, those not meeting the service requirements to vest in APERS have no constitutional objection to a change in service credit.
 I believe it may bear noting, however, that neither Cheney nor Pyle involved an "impairment of contracts" claim by a class of beneficiaries that had not yet met the plan's vesting requirements. Limited to their facts, Cheney and Pyle stand for the proposition that one who fulfills the statutory conditions to qualify for the benefit cannot constitutionally be divested of his "vested right" to the benefit. Arguably, the court was not addressing the issue of whether constitutionally protected "vested rights" might arise at some earlier point.
 I note, additionally, that in contrast to the view that no contractual right exists until the pension or retirement benefit vests, courts in several jurisdictions have held that public employees' pension rights vest upon employment, although the government may under certain circumstances modify benefits "so long as the changes do not adversely alter the benefits, or if the benefits are adversely altered, they are replaced with comparable benefits." Calabro v. City of Omaha, 247 Neb. 955, 967, 531 N.W.2d 541
(1995) (citing cases from California, Idaho, Maryland, and Wisconsin); Pineman v. Oechsline, supra, 494 F. Supp. at 545 (noting that "although pension *Page 6 
rights are only vested at the time of retirement, a `limited vesting' occurs upon commencement of employment . . .," citing Police Board v. Bills, 148 Colo. 383, 366 P.2d 581 (1961).
Op. Att'y Gen. 2008-052 at 16.
I believe this analysis applies equally to a claim by the non-qualified members that their contractual rights include participation in DROP. The few Arkansas cases addressing the matter of "vested rights" in retirement plans suggest that no contractual right exists until the participant has met the plan's qualifying conditions. If this is the correct view of the matter, the non-qualified members of APERS would have no "impairment of contracts" objection to the elimination of DROP. However, the courts do not appear to be in complete agreement on this issue of when legal "vesting" occurs; and it is debatable whether our court has ruled on the matter with respect to those who have not met the statutory requirements to qualify for the benefit. Judicial clarification may be necessary to definitively resolve the matter.
It is also possible, in my opinion, that a court would never reach this "vesting" issue when addressing the elimination of DROP for the non-qualified members. In my opinion, it is questionable whether the elimination of DROP would actually impair any contractual obligations. According to my research, the "impairment of contract" issue may be properly framed by asking: "Does the change in the plan remove or diminish the value of benefits that have already been earned, in effect, under the theory that retirement pay constitutes deferred compensation for services rendered?" See, e.g., Simpson, supra, 88 N.C. App. at 223 ("If a pension is but deferred compensation, already in effect earned, merely transubstantiated over time into a retirement allowance, then an employee has contractual rights to it."). See also Calabro, supra (benefit package reduced as a result of eliminating supplemental plan that was part of the pension); Pineman, supra (requirement of additional years' service to earn pension benefits effectively reduced the expected retirement income);Halpin v. Nebraska State Patrolmen's Retirement System, 211 Neb. 892,320 N.W.2d 910 (1982) (annuity diminished by change in benefits computation).
Where, as in the case at hand, the question involves a change that only affects a benefit that might be earned in the future, the argument based on the concept of deferred compensation plainly has less force. DROP is not part of the retirement *Page 7 
pay that the members arguably bargained for and can expect to receive.Compare Simpson and Pineman, supra. A court as a consequence may not be receptive to the argument that the state is contractually obligated to maintain DROP for the non-qualified members. Unless the legislation eliminating DROP were found to require the forfeiture of benefits for which the non-qualified members legally contracted, it clearly will not have the effect of violating the constitutional prohibition against impairment of contractual rights. The non-qualified members might argue that they have contractual rights in DROP under an inducement theory,see, e.g., Pineman, but this would likely require supportive facts. I lack sufficient information to assess such an argument.
Based on the foregoing, therefore, it is my opinion that the elimination of DROP for the non-qualified members may well survive scrutiny. The surrounding issues are far from clear, however, and judicial clarification may be necessary to definitively resolve the matter.
As for the qualified members, that is, those who will have met the conditions to participate, but will not have elected to participate as of the time the legislation eliminating DROP is adopted, such members may well have a property interest in DROP that is protected under a general "vested rights" analysis. See generally Op. Att'y Gen. 2008-052
at 9-10. Accordingly, a proposal to eliminate DROP as to those persons would be constitutionally suspect, in my opinion.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] To be eligible to participate in DROP, a member must have at least thirty years of actual service in APERS. A.C.A. § 24-4-801(b) (Supp. 2007). "Actual service" is defined as "service credited at the rate of one (1) month for each month of service." A.C.A. § 24-4-101(2) (Supp. 2007). Those meeting these conditions may elect to participate in accordance with A.C.A. § 24-4-802 (Supp. 2007), and defer the receipt of retirement benefits in accordance with A.C.A. §§ 24-8-801 — 806 (Repl. 2000 and Supp. 2007), in lieu of terminating employment and accepting a retirement benefit. Id. at — 801(a) (Supp. 2007).
[2] APERS became contributory in 2005. See A.C.A. 24-4-1101 etseq. (Supp. 2007).
[3] I note that in making this statement, my predecessor did not mention the possible distinction between voluntary, contributory plans and mandatory, non-contributory plans. As I explained in Opinion 2008-052, however, the court has emphasized the voluntary and contributory nature of a plan when addressing this issue of vested contractual rights. Id. at 10. *Page 1