The Honorable Sue Madison State Senator 573 Rock Cliff Road Fayetteville, Arkansas 72701-3809
Dear Senator Madison:
I am writing in response to your request for an opinion on the following questions:
 1. If the Fayetteville Firemen's Pension and Relief Fund Board takes action to reduce pension benefits to retirees, will that violate their rights protected under Article 2, Section 17 of the Arkansas State Constitution as interpreted by the Arkansas Supreme Court?
 2. If so, will members of the Pension Board and the City of Fayetteville be exposed to liability should a lawsuit be filed on behalf of any retiree?
RESPONSE
Your questions may reflect an assumption that but for the potential constitutional issue, the Board of Trustees would be authorized to reduce pension benefits to retirees. I must note, however, that the Board in my opinion probably lacks general authority to reduce benefits, but instead must act pursuant to the statutes governing the pension fund (A.C.A. §§ 24-11-801 et seq. (Repl. 2002 and Supp. 2007)) in effecting any reduction. Accordingly, while I will undertake some discussion of Ark. Const. art. 2, § 17 in response to your first question, it must be recognized that a court may well decide the question on statutory grounds and not reach any constitutional issue(s).[1] *Page 2 
Assuming, however, that a court reached the constitutional issue, then in my opinion the answer to your first question is likely "yes" with regard to a reduction of benefits that were in effect when the members' rights became vested. As explained further below, the answer may be less clear regarding a reduction of any increase in benefits that occurred after the retirement rights became vested. In response to your second question, I can speculate generally that the likelihood of exposure to liability will probably depend upon the success of a complaint in federal court alleging violation of clearly established rights under the federal contracts clause (U.S. Const. art. I, § 10). Issues regarding liability are factually intensive, however, and require knowledge of the surrounding circumstances. These issues must therefore be addressed by the Board and the City with the aid of local counsel.
Question 1 — If the Fayetteville Firemen's Pension and Relief FundBoard takes action to reduce pension benefits to retirees, will thatviolate their rights protected under Article 2, Section 17 of theArkansas State Constitution as interpreted by the Arkansas SupremeCourt?
Article 2, Section 17 of the Arkansas Constitution sets forth the prohibition against the impairment of contracts. It states in relevant part that "[n]o . . . law impairing the obligation of contracts shall ever be passed[.]" See also U.S. Const. art. I, § 10 ("No State shall . . . pass any Law impairing the Obligation of Contracts."). The Arkansas Supreme Court has held that legislation which operates retroactively to divest previously existing contractual rights, and specifically rights arising under a *Page 3 
public retirement plan based on voluntary employee contributions, violates this constitutional prohibition. See Jones v. Cheney,253 Ark. 926, 489 S.W.2d 785 (1973) and Pyle v. Webb, 253 Ark. 940,489 S.W.2d 796 (1973). As further explained in Attorney General Opinion 2008-052:
 Cheney and Pyle reflect the court's adoption of the theory that a public employee, by accepting the terms and conditions of a law that provides for pensions to participating employees, enters into a contractual relationship with the public entity that passed the law. See Cheney, 253 Ark. at 931, citing Anders v. Nicholson, 111 Fla. 849, 150 So. 639 (1933). Under the pertinent terms of that "contract," it is agreed that the employee will be allowed to participate in the retirement plan while employed in his or her public position, and that if the employee meets the plan's vesting requirements, he or she will be entitled to receive the plan's prescribed benefits. Id. See also Op. Att'y Gen. Nos. 1995-247 and 95-071. Under this line of cases, a subsequently enacted law that impairs or divests these assured benefits will be challengeable under Ark. Const. art 2, § 17 and U.S. Const. art. 1, § 10.
Op. Att'y Gen. 2008-052 at 9.
The underlying rationale is that the retirement pay "represents delayed compensation for services rendered in the past due under a contractual obligation inuring to his benefit. . . ." Cheney,253 Ark. at 930; Pyle, 253 Ark. at 943-44 (holding that a retirement system allowance financed over a period of years by joint contributions of employer and employee represented "compensation" rather than a "mere gratuity," and thus was a "vested right" which could not be altered by the operation of subsequent laws.) See also Robinson v. Taylor,342 Ark. 459, 463, 29 S.W.3d 691 (2000); McCarty v. Board of Trustees,45 Ark. App. 102, 117, 872 S.W.2d 74 (1994).
Article 2, Section 17 of the Arkansas Constitution will therefore likely be implicated if the Board of Trustees of the Fayetteville Firemen's Pension and Relief Fund reduces the benefits of retired members of the fund. It seems beyond question that a firemen's pension and relief fund established pursuant to A.C.A. §§ 24-11-801 et seq. gives rise to constitutionally protected contract rights. Members participate in the fund by filing a statement expressing their desire to "participate in the benefits from the fund" and authorizing a deduction from salary as a *Page 4 
contribution. A.C.A. § 24-11-816(a) (Repl. 2002). Fire fighters who have completed the required period of service receive a certificate showing that they are "entitled to participate in all the benefits provided for in this act. . . ." A.C.A. § 24-11-818(b) (Repl. 2002). The latter subsection further explicitly provides that "[t]he right to participate in the fund shall become a vested right. . . ." Id.
However, in order to determine whether there has been an unconstitutional impairment of contract as a result of a reduction in benefits, I believe it may be necessary to further identify the benefits that were assured upon vesting. Although my research has disclosed no Arkansas case on this precise issue, a general rule has been expressed in other jurisdictions as follows:
 The law is too well settled to admit of any doubt that when a participating member of a pension or retirement plan reaches retirement status and elects to retire in accordance with the terms and provisions of the act creating the plan, he acquires at that time a vested right of contract in all benefits conferred upon him under the terms and provisions of the act then in effect. [Citing Stringer v. Lee, 147 Fla. 37, 2 So.2d 127.]
 * * * To the same effect is the Advisory Opinion rendered by the Supreme Court to the Governor of Florida on a question involving the rights of two retired justices of the Supreme Court to be paid the retirement compensation provided by the retirement laws in effect at the time of their respective retirements. . . . In answering the Governor's inquiry the Supreme Court said: ". . . The rights of each retired justice to the pension in accordance with the formula fixed by law at the time of his retirement became vested in harmony with the reasons stated in our opinion in State ex rel. Stringer v. Lee. . . ." [Advisory Opinion to the Governor, 82 So.2d 494
(Fla. 1955).] On the basis of the foregoing it was held that a legislative act adopted subsequent to the retirement of these justices purporting to reduce the amount of retirement pay to which they were previously entitled was void and of no effect.
State v. City of Jacksonville Beach, 142 So.2d 349, 355-56 (Fla.App. 1st Dist. 1961) (emphasis added). See also Simpson v.N.C. Local Gov't Employees' *Page 5 Retirement Sys., 88 N.C. App. 218, 224, 363 S.E.2d 90 (1987) ("Plaintiffs, as members of the North Carolina Local Government Employees' Retirement System, had a contractual right to rely on the terms of the retirement plan as these terms existed at the moment their retirement rights became vested.") 16B Am. Jur.2d ConstitutionalLaw § 721 ("Where a public employee has retired under the terms of a retirement benefit contract, his or her rights under the contract are fixed at the time of the retirement. . . .").
Returning to your particular question involving the Fayetteville Firemen's Pension and Relief Fund, if the Board proposes to reduce benefits that were in effect when the members' rights became vested, then in my opinion such action may well constitute an unconstitutional impairment of the obligation of contract. The answer may be less clear regarding a reduction of any increase in benefits that occurred after their retirement rights became vested. I note in this regard that A.C.A. §§ 24-11-101 — 104 (Repl. 2002) authorizes the board of a municipal firemen's pension and relief fund to increase benefits for future or current retired members and beneficiaries if certain conditions are met, including a finding that the proposed increase would be actuarially feasible. Id. at-102. Although there is authority to the contrary,see, e.g., Campbell v. Michigan Judges' Retirement Board, 378 Mich. 169,143 N.W.2d 755 (1966), it might be successfully contended that there is no vested right to such a subsequent benefit increase. Because the issue is not entirely clear, however, a judicial ruling may be necessary to definitively decide the matter.[2]
The above discussion is obviously premised upon the assumption that the Board of Trustees would otherwise be authorized to reduce retiree' pension benefits. As noted above, however, I must question that assumption. A local fire pension fund is a creature of the legislature. It exists only by virtue of the legislature's authority *Page 6 
to create it. Cf. Op. Att'y Gen. 96-218 (noting that local police pension funds are creatures of the legislature and that the legislature consequently "is at liberty to construct the funds as it sees fit."); A.C.A. § 14-43-601(a)(1)(F) (Repl. 1998) (designating pension systems as "state affairs and subject to the general laws of the State. . . .") The legislature has constructed local police and fire pension funds so as to be administered by local boards of trustees. See A.C.A. §§ 24-11-405 and — 801 (Supp. 2007). These boards plainly must act within the confines of the provisions of the applicable state laws. In this regard, I find clear authority under A.C.A. § 24-11-807 (Supp. 2007) for the Board to reduce benefits if the assets of the fund are insufficient to pay full benefits in the current fiscal year. Id. at (b).[3] According to my review, however, there is no other statutory provision authorizing a reduction of benefits. The Board has general power to "[m]ake all rules and regulations needful for its guidance in conformity with theprovisions of this act." (Emphasis added). In my opinion, this confirms that the Board must act within the confines of the statutes in seeking to reduce benefits.
It is therefore my opinion that a court faced with the question may not reach the above constitutional issues if the Board's action in reducing benefits does not fall within A.C.A. § 24-11-807, as discussed above. A court instead might simply hold that the Board lacks statutory authority to effect such a reduction.
Question 2 — If so, will members of the Pension Board and the City ofFayetteville be exposed to liability should a lawsuit be filed on behalfon any retiree? *Page 7 
Any potential exposure in this regard will probably depend upon the success of a complaint in federal court alleging violation of clearly established rights under the federal contracts clause (U.S. Const. art. I, § 10). See, e.g., Larsen v. Senate of the Commonwealth ofPennsylvania, 154 F.3d 82 (3d Cir. 1998) (denying qualified immunity as to claim that termination of certain vested retirement benefits violated claimant's rights under the federal impairment of contracts clause.) I cannot speculate further in response to your question due to the factual nature of such a claim. Issues regarding liability are factually intensive and require knowledge of the surrounding circumstances. Consultation with local counsel is advisable.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:EAW/cyh
[1] I should also initially note that there may be some question whether Ark. Const. art. 2, § 17 will be implicated if the Board takes action to reduce benefits, given that this prohibition is directed toward the passage of any "law impairing the obligation of contracts. . . ." (Emphasis added). Compare Strain v. Borough ofSharpsburg, 2006 WL 2087497 (W.D. Pa. 2006) (rejecting a claim under the federal impairment clause — U.S. Const. art. I, § 10 — because the claimant did not allege that his denial of benefits was based on a "legislative product or process."); Murray County v. Adams,218 Ga. App. 220,222, 461 S.E.2d 228 (1995) (assuming, without deciding, that action of a school board in modifying benefits under a retirement savings plan "was a legislative action rather than an executive action," and forbidden under Georgia's impairment clause (Ga. Const. art. I, § I)). I will nevertheless assume for purposes of this opinion that the Board's action will potentially fall within Ark. Const. art. 2, § 17.
It also bears noting that contractual rights are property interests under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. E.g. Larsen v. Senate of the Commonwealth ofPennsylvania, 154 F.3d 82 (3d Cir. 1998); 16A C.J.S. ConstitutionalLaw § 229. A reduction in pension benefits by the Board could therefore also result in a claim based on the unconstitutional deprivation of a vested property right, apart from any impairment of contract claim. Because the question of "vesting" is similar for purposes of a due process claim and a claim under the contract clause, I will not undertake a separate due process analysis.
[2] The Michigan case involved a judicial pension plan that gave rise to vested rights identified as follows:
 We hold that a valid contract was entered into between judges and the State, that the State's agreement thereunder to pay the judges certain benefits created vested rights for the judges upon their retirement, that these are enforceable and cannot be impaired or diminished by the State. This should be deemed to include not only the benefits provided by statute at the time of entry into the contract and of retirement, but also, those later added by statutory amendment. The legislature may add to but not diminish benefits without running afoul of constitutional prohibition against impairment of the obligation of a contract.
Campbell v. Michigan Judges' Retirement Board, 378 Mich. at 181
(emphasis added).
[3] This subsection provides as follows:
 Should the fund provided for in this subchapter be insufficient to make full payment of the amount of pensions to all persons entitled thereto, then the fund shall be prorated among those entitled by the proper authorities as may be deemed just and equitable.
A.C.A. § 24-11-807(b) (Supp. 2007).
The statute further states that proration will be considered "just and equitable" if:
 (1) The board of trustees pays the full minimum benefit each month to all eligible beneficiaries until assets in the fund are depleted for the fiscal year, at which time all payments shall cease until revenues are received for the next fiscal year; or
 (2) The board of trustees decreases all payments to all eligible beneficiaries by an equal proportion for the fiscal year and does not allow the assets in the fund to become fully depleted.
Id. at (d). See Op. Att'y Gen. 2005-041 (discussing this proration option). *Page 1